**Francis AZZARELLA, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 7050.**

Court of Appeals of Alaska.

July 19, 1985.

John Michael Eberhart, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

■ Francis Azzarella was convicted, following a jury trial, of felony sale of alcohol without a license. AS 04.11.010; AS 04.16.200(b)(1).[1] Superior Court Judge Paul B. Jones sentenced Azzarella to four years' imprisonment. On appeal, Azzarella challenges his conviction on numerous

---

1. Azzarella contends that AS 04.16.200 is unconstitutional because it was not made effective by the Voting Rights Act at the time of Azzarella's offense and therefore violates the *ex post facto* clauses of the Alaska and United States Constitutions. We decided this claim adversely to Azzarella in *Harrison v. State*, 687 P.2d 332 (Alaska App.1984).

grounds. He also contends that his sentence is excessive. We affirm.

## SUMMARY OF THE CASE

The state's case rested on the following version of events. On August 13, 1981, Bethel police officer George Wright gave an undercover police officer in training, Raymond Alexie, a $50 bill with which to buy illegal alcohol. Wright had written down on a separate piece of paper the serial number of the bill. Alexie went to Azzarella's residence and found Azzarella and Richard Parks, Jr., outside. Alexie asked Azzarella if he could buy a bottle. Azzarella told Alexie that Parks would buy it for him.

Azzarella, Richard Parks, Jr., and Alexie entered the residence and Azzarella went to his bedroom. Alexie and Parks were standing in a small hallway outside the bedroom. Alexie gave Parks the $50 bill and Parks handed it to Azzarella who was still in his bedroom. Azzarella put the bill in the middle of a roll of bills he was carrying and gave Parks $15 in change, which Parks handed to Alexie. Azzarella put the roll of bills back in his pocket. He gave a partly opened bottle of Seagrams whiskey to Parks, which Parks also handed to Alexie. Parks and Alexie then left the house. Alexie did not see anyone else in the trailer but Parks and Azzarella. When Azzarella was arrested, the "marked" $50 bill was found among his money.

The defense theory of the case was that although Azzarella had been in his bedroom at the time of the transaction and had "made change" for the $50 bill, it was actually a man named "Joe Parker" from "up river" who had handed the bottle to Parks from a bathroom. The jury rejected the defense theory.

## GRAND JURY

Azzarella first alleges that the indictment was facially defective and that errors in the prosecutor's submission of the case to the grand jury warrant dismissal.

### A. *The Indictment*

■ The indictment against Azzarella charges:

That on or about the 13th day of August, 1981, at or near Bethel in the Fourth Judicial District, State of Alaska, Frank Azzarella *having previously been convicted of Sale of Liquor Without a License*, did sell an alcoholic beverage, to wit: One bottle of Seagram Seven Crown Whiskey to Raymond Alexie for $35.00 without first procuring a license or permit and in an area where the results of local option election have prohibited issuance, renewal or transferral of licenses or permits. [Emphasis added.]

Azzarella claims that the indictment was defective on its face because the prior conviction was not specified and the indictment did not specifically allege that the prior conviction was for illegal sale *in a local option area.*[2]

■ We believe that the indictment provided Azzarella with adequate knowledge of the charge against him. We note that under Alaska Criminal Rule 6(m) defendants can listen to recordings of, and acquire transcripts of, grand jury proceedings and can inspect exhibits presented to the grand jury. *Peterson v. State*, 562 P.2d 1350, 1367 (Alaska 1977). The grand

---

**2.** Azzarella raises for the first time in his reply brief the argument that his prior convictions were for violations of AS 04.15.110, the misdemeanor bootlegging statute that was repealed in 1980, rather than convictions for AS 04.11.010, as required by AS 04.16.200(b)(1). This argument presents difficult questions of legislative intent and statutory interpretation, which the trial court was not asked to consider, the state has not had an opportunity to brief, and Azzarella has addressed only in passing. These considerations lead us to decline consideration of the issue at this juncture. To the extent that the issue is not a jurisdictional one, Azzarella has clearly failed to preserve it for appellate review. Although we recognize the possibility that the issue may be a jurisdictional one and may not be subject to forfeiture, Azzarella is free to pursue it by the filing of a post-conviction relief application, Alaska R.Crim.P. 35(c); should he choose to avail himself of this procedure, a full factual record—to the extent necessary—may be developed, and ample opportunity to brief the issue will be afforded the parties.

jury transcript in Azzarella's case reveals that the state proved two prior convictions of Illegal Sale of Alcohol through the sworn testimony of the clerk of the Bethel Trial Court: 4BE–79–147 Cr., judgment dated July 11, 1979; and 4BE–80–061 Cr., judgment dated April 16, 1980. The indictment read together with the grand jury transcript gives specific notice of every element of the crime charged. *See Morgan v. State*, 661 P.2d 1102 (Alaska App.1983). We therefore reject the technical specificity argument advanced by Azzarella. *See also Lupro v. State*, 603 P.2d 468, 472–73 (Alaska 1979).[3]

■ Azzarella's second challenge to the indictment is that it does not allege on its face that the prior convictions occurred in a local option, or "dry," area. We reject this argument. The state proved to the grand jury that both of the prior convictions, one in 1979 and one in 1980, occurred after Bethel voted to become a local option area in 1974.

B. *Presentation to the Grand Jury*

■ Azzarella's next contention is that the prosecutor erred in proving Azzarella's prior convictions to the grand jury before proving the other elements of the instant offense, thus prejudicing Azzarella. Although we believe that a better practice might exist, the procedure used in this case was not improper. After the prior convictions were proven, one grand juror asked why they were admitted, since in other cases the grand jurors had been told that they were not to inquire into a defendant's past criminal record. The prosecutor replied:

> One of the elements ... of this offense making it—which makes it a felony is that it's a second or subsequent offense. So it's an element of the crime that the state has to prove that the defendant has

been convicted before of this crime. These are not—which incidentally bears pointing out, grand jury is specifically instructed that—that exhibits 4 and 5 are not to be taken by you as evidence that Mr. Azzarella did or did not commit the crime that he's charged with or—that he would be charged with in this indictment. They are introduced into evidence for the sole purpose of meeting the requirement that the state would ultimately have to prove at trial that Mr. Azzarrella has been convicted before, because that's an element of this crime. The element of this crime essentially could be set out that—that Mr. Azzarella bootlegged and second, that it occurred when local option was exercised and third, that he'd done it before. And those are the three elements. These judgments are introduced only to show that element that it has happened before, but have no bearing on whether or not he did it this time.

We see no reason to believe that the grand jury used the evidence of the prior convictions for purposes other than the one for which it was expressly intended.

■ Azzarella also claims that the state's presentation of evidence to the grand jury was defective for three reasons. First, Azzarella points out that Bethel police officer George Wright testified that only three people were involved in the illegal sale inside the trailer. Azzarella says that this "hearsay" was "untrue." In fact, Wright was testifying about the information relayed to him by undercover agent Alexie. Alexie also testified before the grand jury that only three people—himself, Parks, and Azzarella—were involved in the sale. Therefore, we find that any error in presenting hearsay to the grand jury through George Wright's testimony was

---

**3.** We find without merit Azzarella's implied argument that the state was required to choose only one of the two prior convictions and apprise him of its choice. We note that Azzarella did not file a motion for a bill of particulars under Criminal Rule 7(f). Since neither of the prior convictions is alleged to be defective, the failure to move for a bill of particulars lends no support to Azzarella's ineffectiveness of counsel claim. We also note that Azzarella did not object at trial to the authenticity of any of the three prior judgments of conviction admitted against him.

rendered harmless by the direct testimony of Raymond Alexie.[4]

■ Second, Azzarella cites as error the failure of the district attorney to inform the grand jury that, in a post-arrest statement to Officer Wright, Azzarella denied making the sale. Even assuming that a bare denial of guilt would be admissible[5] and would constitute "exculpatory evidence," we find that the error in failing to present Azzarella's statement to the grand jury was harmless. We are not persuaded that Azzarella's denial of guilt warrants dismissal of the indictment in light of the overwhelming evidence of Azzarella's guilt presented to the grand jury. Given Raymond Alexie's positive identification of Azzarella as the man who sold him whiskey, we do not believe that the grand jury would have refused to indict had they known of Azzarella's bald denial of guilt. *See Tookak v. State*, 648 P.2d 1018, 1021 (Alaska App.1982). *Cf. Doisher v. State*, 632 P.2d 242, 251 (Alaska App.1981), *reversed on other grounds*, 658 P.2d 119 (Alaska 1983) (after one denial of guilt was admitted, failure to present additional denials would have been cumulative).

■ Third, Azzarella claims that the state erroneously omitted to present to the grand jury evidence that a potential witness, Richard Parks, Sr., was prepared to testify that he saw the whiskey passed to Richard Parks, Jr., the go-between, by someone other than Azzarella. Information naming this witness and the offer of proof concerning his testimony were sent by memo from defense counsel to the district attorney either the day before or the day of the grand jury hearing. An uncontroverted affidavit by the district attorney states that he opened the memo three days after the grand jury hearing. The trial court found that the district attorney was not aware of this "possible exculpatory evidence" until after the grand jury met. The court stated that the prosecutor's duty to disclose exculpatory evidence extends only to evidence that the prosecutor knows exists. We are not persuaded that the trial court's findings on this issue are clearly erroneous or that its conclusion is mistaken. Nor do we believe that the information in defense counsel's memo warranted reconvening the grand jury.

## SUPPRESSION OF EVIDENCE

Azzarella claims that the warrant under which he was arrested was defective and that, therefore, the seizure of two items of evidence—the "marked" money and a receipt for a liquor order from an Anchorage store—was illegal. The arrest warrant was issued on the basis of the "probable cause" statement on the complaint, which was sworn to by Officer George Wright. Wright stated, in summary, that Alexie gave Azzarella $50 and Azzarella gave Alexie a bottle of whiskey and $15 in change. Azzarella claims that the statement contains material misstatements because no mention is made of the go-between role of Richard Parks, Jr.

■ Azzarella argued this claim to the trial court, which ruled that "the Magistrate was presented with ... sufficient underlying facts upon which an arrest warrant could be issued." We agree that there was probable cause to issue the warrant, based on Azzarella's involvement in the transaction. The fact that a go-between was involved is not material to whether there was probable cause to issue a warrant for Azzarella's arrest. *See State v. Malkin*, 678 P.2d 1356 (Alaska App.1984) (describing the standard for materiality). Since the arrest warrant was valid, the two items of evidence were legally seized pursuant to arrest.

## VENUE

Azzarella's counsel notified the court, prior to jury selection: "[W]e feel that it

---

**4.** Although Azzarella presented witnesses at trial who claimed that several other people were present in the trailer during the sale, Alexie reiterated at trial that only three people were present.

**5.** *See State v. Agoney,* 608 P.2d 762, 763–64 (Alaska 1980).

may be very difficult to pick a fair jury, and we wish to place the court on notice of that." Defense counsel stated, however, that in his opinion pre-trial publicity did not require an automatic change of venue prior to attempting to pick a jury. Defense counsel requested that *voir dire* be "handled gently," and that prospective jurors be questioned in chambers if they appeared to recognize Azzarella. Defense counsel stated that he was not "at this time asking for additional peremptory challenges or anything of that nature."

The court granted Azzarella's request and questioned several jurors *in camera.* No record exists of the questioning that occurred outside the presence of the other jurors. At the close of jury selection, Azzarella moved to change venue, claiming that several jurors had outside knowledge of the case, and that one individual had had a "personal feud" with Azzarella. The court ruled that it did not find a "pervasive feeling of bias or prejudice that would warrant a change of venue to another location." The motion for change of venue was denied.

 We have reviewed the extensive in-court *voir dire* of the prospective jurors and agree with Judge Jones. Although many of the prospective jurors had heard of Azzarella, no juror who was ultimately chosen has been shown by Azzarella to have been unfair or prejudiced against him. Nor do we find that Azzarella was tried in an atmosphere hostile to him. We therefore do not find that Judge Jones abused his discretion in denying the motion for change of venue. *See Mallott v. State,* 608 P.2d 737, 748 (Alaska 1980); *Chase v. State,* 678 P.2d 1347 (Alaska App.1984).

## PRIOR CONVICTIONS

Prior to *voir dire,* the district attorney offered to prove that Azzarella had prior convictions for bootlegging. Defense counsel responded:

> Your Honor, I've discussed this matter with Mr. Azzarella on several occasions and we're prepared to stipulated [sic] that he has previously been convicted, as

required by the statute, and that stipulation can be presented to the jury as a proven fact.

The court responded that he was willing to have the matter of prior convictions presented to him, rather than to the jury, to prevent unnecessary prejudice to Azzarella. Defense counsel agreed to that procedure.

Immediately prior to trial, Azzarella's counsel moved for a protective order prohibiting the state from introducing before the jury any evidence of Azzarella's prior convictions for illegally selling alcohol. Counsel stated that the evidence would be "highly prejudicial and of low probative value for the charges that he's on trial for now." The court approved the request.

After presentation of the state's case, the state proved the prior convictions to the court by presenting three authenticated judgments. Defense counsel stated that he had no objection to the judgments and renewed his concern that the convictions not be shown to the jury.

 Azzarella claims on appeal that he had a constitutional right to have the jury, not the judge, decide whether he had prior convictions. We stated in *Morgan v. State,* 661 P.2d 1102, 1104 n. 4 (Alaska App.1983), that:

> [s]ome defendants [in felony bootlegging cases] will not desire to have the state prove their prior convictions at trial. These defendants have the option of stipulating to the conviction. *Mead v. State,* 445 P.2d 229, 234 (Alaska 1968), *cert. denied,* 396 U.S. 855, 90 S.Ct. 117, 24 L.Ed.2d 104 (1969).

We fail to perceive any constitutional difference between stipulating to prior convictions, which Azzarella agreed to do, and presenting the uncontroverted convictions to the court without a jury to obviate any unnecessary prejudice to the defendant. It was obviously to Azzarella's benefit to pursue the course of action that he did. We do not find plain error. *See* Alaska R.Crim.P. 47(b).

## RIGHT TO COUNSEL

Azzarella claimed, after trial, that he was deprived of his right to effective representation of counsel. He alleged numerous tactical errors and omissions by his trial counsel, public defender David Weed. Judge Jones held a lengthy evidentiary hearing on the motion, which included testimony by both Azzarella and Weed. Judge Jones decided that Weed's representation of Azzarella did not fall below the standards announced in *Risher v. State*, 523 P.2d 421 (Alaska 1974).

 We have carefully reviewed the transcripts of the jury selection, the pre-trial motions, the trial, and the two-day hearing on the application for post-conviction relief and the motion for a new trial. We are persuaded that Judge Jones' conclusion that attorney Weed performed "at least as well as a lawyer with ordinary training and skill in the criminal law" was not clearly erroneous. *Risher*, 523 P.2d at 424. Weed's decisions, viewed in the framework of trial pressures, were within the range of reasonable actions which might have been taken by an attorney skilled in the criminal law, regardless of the actual outcome of those decisions in Azzarella's case. *Id.* We reach this conclusion both as to Weed's general conduct throughout the trial and as to the specific errors that Azzarella alleges.

## SENTENCE

Azzarella was convicted of a class C felony, for which the maximum term is five years' imprisonment; presumptive terms of two years and three years are prescribed for second and third felony offenders. AS 12.55.125(e). Judge Jones sentenced Azzarella to a term of four years' imprisonment. The state concedes that Azzarella, a first felony offender, was given a sentence exceeding that of a third felony offender. The state argues that the four-year sentence was justified by Azzarella's criminal history and the fact that he had three prior convictions for misdemeanor bootlegging.

Judge Jones found that Azzarella's chances for rehabilitation were poor and that prior criminal sanctions, including imprisonment, have not deterred him. Judge Jones specifically found that Azzarella was a worst offender. Judge Jones based this finding on Azzarella's lengthy criminal record, which dates from 1947, when he was imprisoned for two years in a military stockade for stealing government property. Azzarella has since been convicted of possession of narcotics, fraudulent use of credit cards, escape, auto theft and three illegal sales of liquor. He has violated probation at least twice and had probation revoked once.

 According to the presentence report, Azzarella runs a sophisticated commercial bootlegging operation of long-standing in the Bethel area. Judge Jones found a "good strong inference" that Azzarella makes a substantial portion of his living from bootlegging. We agree with Judge Jones that Azzarella's criminal history justifies characterizing him as a worst offender. *See State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975). Azzarella's extensive record and failure to be deterred or rehabilitated, despite numerous opportunities, justifies the sentence imposed. *See State v. Graybill*, 695 P.2d 725 (Alaska 1985).

Azzarella's conviction and sentence are AFFIRMED.