**STATE of Alaska, Petitioner,**

v.

**David L. McLAUGHLIN, Respondent.**

No. A–4590.

Court of Appeals of Alaska.

Oct. 8, 1993.

William H. Hawley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for petitioner.

Arthur Lyle Robson, Robson Law Office, Fairbanks, for respondent.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, as amicus curiae.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

### INTRODUCTION

David L. McLaughlin was charged by the state with misconduct involving weapons in the first degree in violation of former AS 11.61.200(a)(1) [1]—possession of a concealable firearm by a previously convicted felon. McLaughlin's case was scheduled for a jury trial before Superior Court Judge Jay Hodges. At the outset of trial, McLaugh-

---

**1.** As originally enacted, AS 11.61.200 defined the offense of misconduct involving weapons in the first degree; the offense was a class C felony.

Former AS 11.61.200(f). As such, it was the most serious form of misconduct involving weapons then existing. After McLaughlin was

lin indicated his willingness to concede that he had previously been convicted of a felony.

Since McLaughlin conceded the existence of a prior conviction, Judge Hodges found no need for the jury to consider whether McLaughlin was a previously convicted felon and ruled that the jury would decide only whether McLaughlin knowingly possessed a concealable firearm. Because McLaughlin's criminal history appeared to have no bearing on any issue remaining in dispute, the judge further concluded that evidence of McLaughlin's prior convictions would be inadmissible unless it became relevant to specific issues arising during the course of trial. Over the state's objection, the judge ordered the prosecution to refrain from mentioning or attempting to prove McLaughlin's prior convictions unless the court first determined them to be relevant to a specific disputed issue.

The state petitioned this court to review the superior court's order; we granted the state's petition and directed the parties to submit briefs on the merits.[2]

## DISCUSSION

### 1. *Issue Presented*

Both in Alaska and elsewhere, courts have recognized that evidence concerning the number and nature of a defendant's prior convictions can pose a serious risk of prejudice when introduced in a case in which a prior conviction is an element of the offense charged. For this reason, ap-

pellate courts have generally agreed that the trial court has broad discretion to limit the amount of evidence allowed on the issue and to regulate the form in which it is presented, particularly when the defendant does not dispute the prior conviction's existence.[3]

The precise issue presented for review in this case is somewhat different, however: whether the trial court in a felon-in-possession prosecution may, in reliance on the defendant's willingness to concede the existence of a prior felony conviction, bar proof of the prior-conviction element entirely and withdraw the issue from the jury.

On review, the state argues that the trial court lacked authority to force the prosecution to accept McLaughlin's concession of a prior conviction and to bar proof on this issue. Although the state acknowledges that the disputed evidence was not relevant on any issue other than the issue McLaughlin was prepared to concede—that McLaughlin had previously been convicted of a felony—the state contends that the court had no discretion to rule as it did.

### 2. *Standard of Review*

■ As presented by the state, this claim involves a pure question of law, which is subject to the *de novo* standard of review. *Langdon v. Champion*, 745 P.2d 1371, 1372 n. 2 (Alaska 1987).

### 3. *Analysis*

■ No Alaska case has squarely decid-

charged, the legislature amended AS 11.61. by adding two new and more serious forms of misconduct involving weapons, one a class A felony that was designated as misconduct involving weapons in the first degree (AS 11.61.-190) and the other a class B felony that was designated as misconduct involving weapons in the second degree (AS 11.61.195). These additions required AS 11.61.200 to be amended and redesignated as misconduct involving weapons in the third degree. In its amended and redesignated form, AS 11.61.200(a)(1) continues to make the conduct charged in McLaughlin's case—being a felon in possession of a concealable firearm—punishable as a class C felony.

**2.** *See* Alaska Appellate Rules 402 and 403. This court also requested the Alaska Public Defender Agency to submit an *amicus curiae* brief addressing the merits of the issue raised by the state.

**3.** *See Mead v. State*, 445 P.2d 229, 233–34 (Alaska 1968); *Weitz v. State*, 794 P.2d 952, 956–57 (Alaska App.1990); *Elerson v. State*, 732 P.2d 192, 195 (Alaska App.1987); *United States v. Dockery*, 955 F.2d 50, 54 (D.C.Cir.1992). *United States v. Collamore*, 868 F.2d 24, 28–30 (1st Cir.1989).

ed the issue presented in this case.[4] Courts in other jurisdictions are not entirely unanimous, but a vast majority, espousing the traditional view that the government need not accept the accused's proposed concession to an element of an offense,[5] holds that a trial judge cannot altogether bar the prosecution from introducing evidence to prove a necessary element of its case, even when the element is undisputed.[6]

The state urges us to follow the majority view and to reverse the trial court's ruling in McLaughlin's case. The state argues that the court had no authority to preclude the state from proving a necessary element of the offense, that the court's ruling amounted to an improper judicial amendment of the first-degree weapons misconduct statute, and that it deprived the state of its right to a jury trial. We need consider only the first of these arguments.

The state maintains that it is improper to preclude the prosecution from proving an element of an offense and asserts that, in the present case, "excluding all evidence that [McLaughlin] has a prior conviction is unfair." In support of this contention the state cites Wigmore for the proposition that it should not be required to stipulate to a "colorless admission" of an element of the offense, since such a stipulation would unjustifiably deprive it "of the legitimate *moral force of [its] evidence."* IX John H. Wigmore, *Evidence* § 2591 (Chadbourn rev. 1981).

In our view, however, the crucial issue is not whether the state has the right to present the "legitimate moral force of its evidence"—an unassailable proposition in the abstract—but rather whether any "moral force" gained by proving McLaughlin's prior convictions retains legitimacy given McLaughlin's willingness to concede the point. This issue is a close one; its resolution depends largely on whether it is viewed as a narrow question of evidentiary relevance or a broader question involving policies that are not strictly evidentiary.

From the narrow standpoint of evidentiary relevance—the standpoint argued by McLaughlin here—a strong case can be made that the evidence of McLaughlin's prior convictions should properly be excluded. The specific circumstances of some felon-in-possession cases might give the state legitimate reasons to introduce evidence of prior convictions even though the defendant is willing to concede the prior-conviction element. In most cases, however, once the defendant concedes the prior-conviction element, evidence of prior convictions would have no evidentiary relevance except to establish the defendant's general propensity to commit crimes—an impermissible, and therefore illegitimate, purpose under Alaska Rule of Evidence 404(b)(1).

The present case provides a good illustration. McLaughlin fully and unequivocally conceded that his prior felony conviction precluded him from possessing a concealable firearm. Given McLaughlin's concession, the trial court would be able to inform the jury that McLaughlin has agreed that he was forbidden by law from carrying a

---

**4.** A number of decisions of this court and the Alaska Supreme Court have commented in passing on this issue or on similar issues arising in analogous situations, but no case has squarely decided it. *See, e.g., Mead v. State,* 445 P.2d 229, 233–34 (Alaska 1968); *Weitz v. State,* 794 P.2d 952, 956–57 (Alaska App.1990); *Elerson v. State,* 732 P.2d 192, 195 (Alaska App.1987); *Azzarella v. State,* 703 P.2d 1182, 1188 (Alaska App.1985); *Wortham v. State,* 689 P.2d 1133, 1138–39 n. 4 (Alaska App.1984); *Morgan v. State,* 661 P.2d 1102, 1104 n. 4 (Alaska App. 1983).

**5.** For a discussion of the traditional view on this issue, *see generally* Edward J. Imwinkelried, *The*

*Right to "Plead Out" Issues and Block the Admission of Prejudicial Evidence: the Differential Treatment of Civil Litigants and the Criminal Accused as a Denial of Equal Protection,* 40 Emory L.J. 341, 353–56 (1991) (hereinafter "Imwinkelried").

**6.** *Compare United States v. Collamore,* 868 F.2d 24, 29 (1st Cir.1989), and *United States v. Williams,* 612 F.2d 735, 739–40 (3d Cir.1979), with *State v. Davidson,* 351 N.W.2d 8, 10 (Minn. 1984).

concealable firearm. The state did not argue below and does not contend here that McLaughlin's prior criminal record has any evidentiary relevance except as proof of the element McLaughlin is prepared to concede. Moreover, the trial court has expressly left the door open to reconsideration should McLaughlin's prior convictions become relevant to any disputed issue that might arise during the course of trial.

Under these circumstances, McLaughlin's prior crimes are wholly superfluous from a purely evidentiary standpoint: their only evidentiary relevance is on an issue that has been conceded and therefore requires no further proof. Because of the obvious danger of prejudice this evidence would create as otherwise inadmissible proof of McLaughlin's general criminal propensity, *see* Alaska Rule of Evidence 404(b)(1), the legitimacy of its "moral force" may be properly questioned:

> [W]hen the defense offers the prosecution a full, unequivocal stipulation of an ultimate, historical fact, there is an "utter absence of a legitimate state interest" justifying the rejection of the offer. The introduction of evidence is a means to the end. The only legitimate purpose for introducing evidence is to prove the ultimate, historical propositions disputed between the parties. In a given case, a prosecutor may hope that the admission of an item of prejudicial evidence will affect the jury's determination of factual issues in addition to the issue the judge admits the evidence to prove. However, if that hope is realized, the jury will be misusing the evidence and perhaps returning a wrongful verdict.[7]

The state's "legitimate moral force" argument nevertheless looks beyond the narrow issue of evidentiary relevance. The state raises a valid—and, we think, ultimately persuasive—concern: it points out that McLaughlin's jury has a legitimate right to be informed of all of the elements of the crime charged and of the proof bearing on those elements so that jurors will not be misled to think they are being asked to convict McLaughlin for mere possession of a firearm.

The state argues that if the jury is left with the inaccurate impression that McLaughlin is being prosecuted for conduct that most jurors surely know to be permissible, the jury may be tempted to nullify the law by returning a not guilty verdict, even though convinced that McLaughlin possessed a concealable firearm. As the state correctly points out, many courts have cited this danger as justifying the rejection of defense concessions in felon-in-possession cases.[8]

The prospect of nullification is certainly a legitimate concern. Two courts have nonetheless concluded that the danger of nullification can be avoided by appropriate jury instructions. The California Supreme Court found the nullification argument unpersuasive in *People v. Hall,* 28 Cal.3d 143, 167 Cal.Rptr. 844, 616 P.2d 826 (1980) (en banc):

> Instructions can be framed in such a manner that the potentially prejudicial prior conviction is not mentioned to the jury yet the jury can be informed that possession of a concealable firearm is not criminal under all circumstances.

*Id.,* 28 Cal.3d 143, 167 Cal.Rptr. at 850, 616 P.2d at 832 (footnote omitted).

Similarly, in *State v. Davidson,* 351 N.W.2d 8, 12 (Minn.1984), the Minnesota Supreme Court stated:

> *Piper,* 103 Cal.App.3d 102, 162 Cal.Rptr. 833, 837 (1980) ("Possession of a concealable weapon is not *per se* illegal; if the jury is not allowed to see the whole picture, jurors may be baffled at being asked to determine guilt on a finding of possession where they may be well aware that mere possession is not an offense.").

---

**7.** Imwinkelried, *supra* note 5, at 376–77 (footnotes omitted; quoting *Marshall v. Lonberger,* 459 U.S. 422, 447, 103 S.Ct. 843, 857, 74 L.Ed.2d 646 (1983) (Blackmun, J., dissenting)).

**8.** *See, e.g., United States v. Collamore,* 868 F.2d at 28 ("Doubt as to the criminality of [the defendant's] conduct may influence the jury when it considers the possession element."); *People v.*

In this case we believe that the potential for unfair prejudice clearly outweighed the relevance, if any, that the evidence had to other issues. The court should have granted the defendant's motion and should have instructed the jury to the effect that defendant had stipulated that under Minnesota law he was not entitled to possess a pistol and that therefore the jury should direct its attention to the issue of whether or not the state had established beyond a reasonable doubt that he possessed the pistol, either actually or constructively.

In our view, however, jury instructions cannot cure the problem, and, in fact, might exacerbate it. As a purely practical matter, we think it highly questionable whether any useful purpose can be served by precluding proof of a prior conviction and instructing the jury that the defendant was prohibited by law, for some reason that cannot be disclosed, from possessing a firearm.

For many jurors—those with a modicum of awareness—such an instruction would simply be tantamount to being told that the defendant has previously been convicted of a felony.[9] For other jurors—those with less awareness but a modicum of imagination—the instruction could be far worse,

for it would amount to little more than an open invitation for speculation. The demons of imagination could hardly be lulled by bland admonishments to refrain from speculating on the issue; once awakened, those demons would be free to roam a landscape of boundless dimension. Apart from distracting the jury from the facts at issue, speculation of this sort would pose the far more pernicious risk that jurors might decide guilt based on inaccurate assumptions about the reasons behind the prohibition against the defendant's possession of a firearm.

Compared to the inevitable prospect of uncontrolled jury speculation, the alternative of informing the jury of the true elements of the charged crime and of the bare and unadorned fact that the defendant has previously been convicted of a felony seems to us the lesser evil. But even if we assume that speculation could be controlled through proper instruction, hiding the true elements of the offense from the jury would cause a second, more fundamental problem—one touching on the role of the jury in our criminal justice system.

█ As we have already pointed out, courts have traditionally precluded criminal defendants from unilaterally conceding ele-

---

**9.** The point is well illustrated by the recent decision of the Minnesota Court of Appeals in *State v. Carnahan*, 482 N.W.2d 793, 795 (Minn. App.1992). In *Carnahan*, the court of appeals specifically declined to extend the Minnesota Supreme Court's holding in *State v. Davidson*, 351 N.W.2d 8 (Minn.1984), to the case of a defendant charged with driving after license revocation who had offered to stipulate that his license had been revoked. *Carnahan*, 482 N.W.2d at 795. The court reasoned that an instruction similar to the one suggested in *Davidson* would be futile in a driving after license revocation case:

> [T]elling the jury the defendant admitted he was not entitled drive ... suggests nothing different than evidence on a revoked license; revocation or its equivalent are necessarily implied by the instruction. No such problem was involved in *Davidson*, since the *Davidson* instruction that the defendant could not legally possess a pistol did not imply a prior conviction.

*Id*

The reasoning of the Minnesota Court of Appeals seems convincing insofar as it concerns the probable effects of a *Davidson*-type instruction in the case of a defendant charged with driving after revocation. Far less plausible, however, is the *Carnahan* court's conclusion that felon-in-possession cases present "no such problem." Perhaps the *Carnahan* court's conclusory and unconvincing attempt to distinguish between license revocation and felon-in-possession cases can be explained in pragmatic terms: reluctant to follow *Davidson*, the Minnesota Court of Appeals was obviously constrained to find some colorable ground to distinguish the Minnesota Supreme Court's decision.

In any event, the distinction drawn in *Carnahan* is hardly more than colorable; we fail to discern any realistic difference between the probable effects of a *Davidson*-type instruction in the context of felon-in-possession and driving after revocation cases.

ments of offenses.[10] A different rule has applied in civil cases: in the civil arena, a party-defendant is commonly permitted to concede the existence of an element of the plaintiff's claim; the concession removes the element from dispute, obviates the need for its active litigation, and allows submission of the case to the finder of fact—be it judge or jury—without evidence on the issue.[11] At least one commentator has attempted to explain the disparate treatment of concessions in civil and criminal cases as historical accident.[12] We think this explanation questionable.

Civil cases tend to pit private parties against one another or against various government agencies on relatively equal footing: in most disputes over property, money, domestic affairs, or the like, what one party may demand or compel of another—procedurally or substantively—the other may generally compel or demand in return.

In contrast, criminal cases pit the individual against the government on terms that are inherently unequal. When the government charges an individual with a crime, the balance of power is clearly in its favor, and the scope of the government's power is enormous. The unique power of public prosecution empowers the government to bring to bear against individuals the full might of its authority as representative of the common good. At stake is the individual defendant's liberty, not the respective legal rights of opposing litigants. Upon a formal charge of wrongdoing, the government can compel the defendant's arrest and detention pending trial; upon conviction, the defendant can be incarcerated for prolonged periods of time. The defendant enjoys no reciprocal right to demand the government's liberty when it does not prevail.

But the prosecutor's power does not go untempered. Our political tradition holds individual liberty in high regard and teaches the need for a healthy public skepticism toward government power. The Bill of Rights and the United States Constitution's elaborate system of checks and balances exemplify these values. In the arena of criminal justice, our laws have always recognized the imbalance of power between the government and the individual. The right to indictment by a grand jury, the guarantee of public trial, the privilege against self-incrimination, the presumption of innocence, the burden of proof beyond a reasonable doubt, the right of confrontation, and the right to compulsory process are all procedural devices aimed at holding disproportionate government power in check.

The right to a jury trial likewise plays an integral part in this balance. The jury's historical role in our criminal justice system is more than that of fact finder: the jury has always served as the vehicle of community conscience in the courtroom—the mechanism by which public skepticism is brought to bear against the power of the public prosecutor:

> Our constitution guarantees the accused the right of a trial by a jury of his peers, primarily in order to ensure that the accused is judged by prevailing community mores. As Judge Learned Hand stated, the institution of the jury "introduces a slack into the enforcement of law, tempering its rigor by the mollifying influence of current ethical conventions."

*United States v. Gilliam,* 994 F.2d 97, 101 (2d Cir.1993) (quoting *United States ex rel. McCann v. Adams,* 126 F.2d 774, 776 (2d Cir.1942)).

> courts set their face against special admissions for reasons which no longer obtain. Judicial inertia appears to be the primary explanation for the continued insistence that an accused who chooses to contest guilt resort to the "invariable" general not guilty plea. *Id.* at 356.

**10.** *See* Imwinkelried, *supra* note 5, at 353–56.

**11.** *See id.* at 347–53.

**12.** As Imwinkelried says on this score:
It is an historical accident that even today an accused cannot specifically admit the truth of an historical allegation in the accusatory pleading. At early common law, the criminal

■ Essential to the jury's ability to fulfill its traditional role is its full understanding of the cause at issue—the wrongdoing for which the accused has been held to answer. In *United States v. Gilliam*, 994 F.2d at 102, the court rejected the argument that a defendant in a felon-in-possession case should have been allowed to withdraw the issue of prior felony convictions from the jury by unilateral concession, finding "a significant difference ... between a rule formulated to limit the admissibility of potentially prejudicial evidence and a rule that eliminates an element of a crime legislated by Congress." The *Gilliam* court traced the roots of this difference to the jury's role as a representative of the community's conscience:

> Without full knowledge of the nature of the crime, the jury cannot speak for the people or exert their authority. If an element of the crime is conceded and stripped away from the jury's consideration, the jurors become no more than factfinders. The jury must know why it is convicting or acquitting the defendant, because that is simply how our judicial system is designed to work.

*Id.* at 101. *Cf. United States v. Barker*, 1 F.3d 957, 960 (9th Cir.1993).

The issue is one transcending a jury's ability to determine guilt or innocence in any individual case. It implicates the public's trust in our system of criminal justice. If those in the inner sanctum of the criminal justice system—the judge, the prosecutor, and defense counsel—cloister to themselves the true nature of a criminal prosecution, jurors will inevitably sense manipulation: that they are participants in a game

of justice whose rules are beyond their trust. The system's distrust of jurors will eventually mirror back upon the court in the form of public suspicion. Citizens called upon to serve as jurors will bring with them, not a healthy skepticism toward the prosecutor's power, but a subversive distrust of the legal process itself.[13]

■ The statutory definition of the crime charged in any given case is relevant information for the jury. This holds true regardless of which elements of the crime are actually disputed, for without knowing the true nature of the charges, the jury is deprived of context for its consideration of the issues actually in dispute.[14] When there is legitimate cause to make the defendant's prior conviction of a felony a necessary element of a crime—and no one disputes this proposition as to the crime of being a felon-in-possession of a concealable firearm—then there is surely legitimate reason to apprise the jury of this element, and to allow its proof.

Our system regularly entrusts juries with unpleasant, often shocking, evidence; we regularly trust that juries will use this evidence for its proper purpose, without being swayed by its potential to cause prejudice to the accused. There is nothing improper or undesirable in this, provided that the evidence is actually necessary. In our view, informing the jury of the elements of an offense is necessary, and the admission of evidence necessary to prove those elements is neither improper nor undesirable. We find little basis to distrust the jury's ability to make proper use of necessary evidence, even when that evidence reveals previous wrongdoing by the

---

**13.** Witness the experience of California, where the decision of the California Supreme Court in *People v. Hall*, 28 Cal.3d 143, 167 Cal.Rptr. 844, 851, 616 P.2d 826, 833 (1980) (en banc), which approved unilateral concessions of prior convictions in felon-in-possession cases, was abrogated two years later by a public initiative amending California's constitution to require the jury to be informed in open court of any prior felony whose existence is an element of the offense charged. *See* Cal. Const. art. I, § 28 subd. (f);

*People v. Bouzas*, 53 Cal.3d 467, 279 Cal.Rptr. 847, 807 P.2d 1076 (1991) (describing the manner in which *People v. Hall* was abrogated). *See also People v. Valentine*, 42 Cal.3d 170, 228 Cal. Rptr. 25, 28, 720 P.2d 913, 916 (1986).

**14.** *Cf. Dulier v. State*, 511 P.2d 1058, 1061 (Alaska 1973); *McKee v. State*, 488 P.2d 1039, 1042–43 (Alaska 1971).

accused.[15]

## CONCLUSION

We conclude that the superior court erred in barring the state from presenting evidence to prove McLaughlin's previous conviction of a felony.

The superior court's order is RE-VERSED.

COATS, J., dissents.

COATS, Judge, dissenting.

I dissent from the court's decision that Judge Hodges did not have discretion to remove from the jury's consideration evidence that McLaughlin had previously been convicted of a felony. McLaughlin fully and unequivocally conceded his prior conviction. The state has never contended that the evidence of McLaughlin's prior felony conviction was relevant for any purpose other than as proof of an element of the offense which McLaughlin has conceded. Furthermore, Judge Hodges expressly left open reconsideration of admitting the evidence of McLaughlin's prior conviction if this evidence proved relevant to an issue that became disputed during the trial. Under these circumstances, McLaughlin's prior felony conviction had no evidentiary relevance.

On the other hand, if the state presents evidence to the jury of McLaughlin's felony conviction, the risk that the jury would be unfairly prejudiced against McLaughlin is substantial. *See Oxereok v. State*, 611 P.2d 913 (Alaska 1980). If we look at this issue as strictly an evidentiary matter, it seems clear that Judge Hodges could properly determine that the evidence of McLaughlin's prior conviction had little probative value and that admission of the evidence had a substantial danger of unfair prejudice to McLaughlin. A.R.E. 403. The majority concedes the evidentiary point. However, the majority is persuaded by the state's argument that the jury has a right to be informed of all of the elements of the crime charged, so that the jurors will not be misled into thinking that they are being asked to convict McLaughlin for mere possession of a firearm. The state argues that if the jury is left with the inaccurate impression that McLaughlin is being prosecuted for conduct that most jurors will know is permissible, the jury may be tempted to nullify the law by returning a not guilty verdict even though convinced that McLaughlin possessed a concealable firearm.

It is not necessary to allow the state to prove every element of every offense with which a defendant is charged. The majority opinion recognizes this by pointing out that the decision in this case does not apply to offenses such as we discussed in *Morgan v. State*, 661 P.2d 1102, 1103–04 (Alaska App.1983). Morgan was charged with bootlegging—unlicensed sale of alcohol in a

---

**15.** Of course, as we have already indicated, the trial court is vested with broad discretion to regulate the scope of prior crimes evidence and the form in which it will be admitted, in order to avoid unnecessary prejudice. When the existence of a qualifying prior felony conviction is unequivocally conceded in a felon-in-possession case, evidence of that fact, unembellished, will normally be all that is necessary to allow the state to prove this element of the offense.

We further note that our decision addresses only the specific circumstances of this case, in which the charged offense consists of conduct that is ordinarily lawful, which is rendered unlawful only because of the defendant's prior conviction of a felony. By contrast, other types of crimes that include the existence of a prior felony conviction as an element deal with con-

duct that is already independently unlawful; in such cases, the prior-conviction element serves only to enhance the seriousness of the offense. *See, e.g., Morgan v. State*, 661 P.2d 1102, 1103–04 (Alaska App.1983) (unlicensed sale of alcohol in a local option area, normally a class A misdemeanor, becomes a class C felony when the defendant has previously been convicted of a similar offense).

In this latter type of case, failing to inform the jury of the prior-conviction element arguably entails few of the problems presented in the former type of case; consequently, a strong argument might be made for a significantly broader range of trial court discretion. *See Azzarella v. State*, 703 P.2d 1182, 1188 (Alaska App.1985). The facts of this case do not require us to decide the issue.

local option area. Morgan had previously been convicted of this offense. Under the bootlegging statute, Morgan was subject to conviction for a class C felony if the state proved two elements: 1) that Morgan committed the crime of bootlegging, and 2) that he had previously been convicted of this offense.

Assuming that Morgan was willing to concede the existence of the prior conviction, and the prior conviction had no other evidentiary relevance other than to establish the second element of the offense, there seems to be little reason to inform the jury of this prior offense if the defendant is willing to stipulate. Evidence of the prior conviction for the similar offense would have a substantial danger of unfair prejudice to the defendant. It would therefore be proper for the trial judge to determine that the defendant's trial should focus only on the matter in dispute: whether the defendant committed the crime of bootlegging.

It seems to me that similar analysis applies in the present case. The fact of McLaughlin's prior conviction is not in dispute. It is therefore irrelevant. Proof of the prior conviction poses a substantial danger of unfair prejudice. The only distinction is the fact that in the felony bootlegging example, bootlegging is a crime and possession of a concealable weapon is not. The state therefore fears jury nullification. However, the Supreme Court of Minnesota and the Supreme Court of California have found the nullification argument to be unpersuasive. *State v. Davidson*, 351 N.W.2d 8 (Minn.1984); *People v. Hall*, 28 Cal.3d 143, 167 Cal.Rptr. 844, 616 P.2d 826 (1980).[1] In *Hall*, the court stated:

> Instructions can be framed in such a manner that the potentially prejudicial prior conviction is not mentioned to the jury yet the jury can be informed that

possession of a concealable firearm is not criminal under all circumstances.

*Id.*, 28 Cal.3d 143, 167 Cal.Rptr. at 850, 616 P.2d at 832 (footnote omitted).[2]

The trial court can instruct the jury that McLaughlin was charged with possessing a concealable firearm when the law prohibited him from doing so, that he expressly agreed that the law prohibited him from possessing a concealable firearm at the time of the alleged offense, and that the jury is required to accept this agreement without speculating about the reasons that it is unlawful for McLaughlin to possess a concealable firearm. The state seems to contend that such an instruction would not cure the potential prejudice that might arise from the jury not knowing the reason why McLaughlin could not possess a firearm. However, the state has consistently argued in felon-in-possession cases and in other cases where prejudicial material has been presented to a jury, that limiting instructions adequately protect defendants against prejudice arising from proof of a prior conviction. We have frequently accepted the position that the trial judge can determine that a curative instruction will limit the risk of unfair prejudice which results from potentially prejudicial material. *See Weitz v. State*, 794 P.2d 952, 956 (Alaska App.1990); *Roth v. State*, 626 P.2d 583 (Alaska App.1981).

Similarly, we should accept the position that we can expect a trial jury to follow a trial court's instruction, which explains to the jury that the defendant has agreed that he is prevented by law from possessing a concealable firearm and which instructs the jury to focus on the relevant inquiry: whether the defendant possessed a concealable firearm as charged in the indictment. I recognize that this procedure does not eliminate the risk that a jury which is informed of the defendant's prior conviction

---

**1.** The California Supreme Court's decision in *People v. Hall*, was abrogated by a public initiative amending California's Constitution. *See* footnote 13, page —— of majority opinion.

**2.** The court in *Hall* went on to suggest an appropriate instruction. *Hall*, 28 Cal.3d 143, 167 Cal. Rptr. at 850 n. 7, 616 P.2d at 832 n. 7.

may acquit the defendant because it does not understand the nature of his offense. However, there is at least an equal danger that a jury may be unfairly prejudiced against a defendant when it learns he has previously been convicted of a felony. I would allow a trial judge to balance these considerations. It seems to me that allowing the trial judge discretion in this matter would result in fairer trials in felon-in-possession cases.

A procedure which allows a defendant to stipulate that he has previously been convicted of a felony, thus removing this evidence from the jury's consideration, has significant advantages where the defendant is charged with more than just the felon-in-possession charge. For instance, where the defendant is charged with committing a robbery with a firearm and is also charged with felon-in-possession, the trial court faces a dilemma. *See Wortham v. State*, 689 P.2d 1133 (Alaska App.1984). If the court is required to allow the state to inform the jury of the defendant's prior felony conviction on the felon-in-possession charge, the defendant faces the danger of having the jury prejudiced by this evidence. The defendant would have a strong argument that the court must sever the two charges, resulting in two trials. Allowing the defendant to stipulate to the existence of the prior felony conviction, thus removing the evidence of the prior felony conviction from the jury's consideration, limits this prejudice and could allow the state to proceed against the defendant in one trial.

Jurors are human beings. As human beings, they have passions and prejudices. The law has recognized this, and frequently acts to screen jurors from facts which tend to arouse passion or prejudice, and make it harder for jurors to reach a fair verdict. The law has allowed the trial judge to exercise discretion to weigh the probative value of evidence against the danger that the evidence might arouse unfair passion or prejudice. The law has recognized that limiting the evidence at trial to relevant evidence makes it easier

for a jury to render a fair and impartial decision. The law has recognized when a jury learns that a defendant has previously been convicted of a felony offense, the jury may be prejudiced against a defendant. Where the trial judge determines that evidence of a prior felony conviction in a felon-in-possession case does not have any probative value and that there is substantial danger that the evidence of the prior felony conviction may unfairly prejudice the jury, I see no reason to require the judge to allow the state to present this evidence. It seems to me that the solution which Judge Hodges proposed in this situation is sensible. I would accordingly affirm Judge Hodges' decision.

I therefore DISSENT from the majority's decision.