802 A.2d 460

**Antwan Leroy CARTER,**

v.

**STATE of Maryland.**

**No. 0506, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

July 1, 2002.

---

196

Sherrie B. Glasser, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Leigh S. Halstad, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Patricia Jessamy, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before SALMON, KENNEY, ADKINS, JJ.

ADKINS, Judge.

A jury in the Circuit Court for Baltimore City convicted Antwan Leroy Carter, appellant, of possession of a regulated

firearm by one previously convicted of a crime of violence, possession of a regulated firearm by a person under the age of twenty-one, and unlawful discharge of a firearm within the City of Baltimore. In challenging his convictions, appellant presents two issues of first impression in Maryland:

(1) Did the trial court err in refusing to withhold from the jury evidence that appellant had been convicted of a violent felony when appellant was willing to concede that element of his crime?

(2) Did the trial court err in refusing appellant's offer, as a fall-back position, to stipulate before the jury that he was guilty of a "crime of violence," instead of admitting evidence of his conviction for armed robbery?

We shall hold first that, because the fact of a prior conviction is an element of the offense charged, the State had a right to introduce evidence of the prior conviction to the jury. Second, because appellant offered, as a fall-back position, to stipulate that he was guilty of a prior crime of violence, the trial court was required to weigh the probative value of introducing evidence of the name of his crime against the risk of unfair prejudice to appellant in doing so. We conclude that the trial court did not abuse its discretion in this regard.

## FACTS AND LEGAL PROCEEDINGS

Baltimore City Police Officer Ronald Marriott testified that at approximately 10:45 on the night of August 29, 2000, he was in the 900 block of Coppin Court when he heard gunfire that he estimated to be within 100 yards of his location. Marriott ran to the location from which the gunfire originated. He saw two men wearing white sweatshirts running down Bethune Road, toward Bunch Road. He also saw appellant approximately 50 yards from him, holding a handgun and firing it into the air. After firing the gun, appellant followed the other men.

Officer Marriott followed appellant. He lost sight of him for 10 or 15 seconds when appellant ran between two houses, but eventually caught up to appellant and placed him under

arrest. Appellant did not have a gun on him when he was arrested. Police officers searched the area, but were unable to find the gun. A gunshot residue test performed on appellant's right hand after his arrest, however, returned a positive result.

As a result of this incident, appellant was charged with possession of a regulated firearm by one previously convicted of a crime of violence, possession of a regulated firearm by a person under the age of twenty-one, and unlawful discharge of a firearm within the City of Baltimore.[1]

Before trial, defense counsel requested that the trial court "sanitiz[e] the first count."

> [DEFENSE COUNSEL]: .... [W]e were hoping that before you announced to the jury what the charges were that you would consider sanitizing the first count and redacting

---

1. Appellant was charged under the following statutes: in count one, Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Art. 27 section 445(d)(possession of regulated firearm after conviction of certain offenses); in count two, Art. 27 section 445(e) (possession of firearm by a minor); in count three, Baltimore City Code ("BCC")(1987, 1995 Repl.Vol.), Art. 19 section 112.

 We note that the State charged appellant under an outdated version of the BCC. The entire code was renumbered and recodified, effective May 1, 2000. Because the incident upon which appellant's indictment was based occurred in August 2000, he should have been charged under BCC (2000), Art. 19 section 59–2, which is substantively identical to the crime of discharging a firearm within the City of Baltimore under former BCC (1987, 1995 Repl.Vol.), Art. 19 section 112.

 This defect in the charging document is not fatal, however, because appellant failed to raise the issue before the circuit court, as required by Md. Rule 4–252. Moreover, charging a defendant under the incorrect code section does not render the indictment defective for failure to charge an offense if the crime is otherwise charged with sufficient specificity. *See Vines v. State*, 40 Md.App. 658, 661–62, 394 A.2d 809 (1978) (citation of incorrect statutory section not fatal when charge "properly set forth all the facts necessary to charge [the defendant] ... under the correct section number"); *see also Sonnier v. United States*, 314 F.2d 69, 70 (4th Cir.1963)(approving charging document citing superceded statute). Here, the charging document sufficiently defined the elements of the recodified Art. 19 section 59–2.

 Appellant was also charged with one count of reckless endangerment, but his motion for judgment of acquittal on that count was granted at the end of the State's case.

from it the charge that—convicted of a crime of violence—what we'll be proposing is that the charge of possession need not go to the jury. If they convict him of that, we understand that that is possession of a handgun by someone who's been convicted of a crime of violence. What it does is, obviously, it eliminates the potential prejudice—

THE COURT: I'm hearing you, ... but I truly would have hoped for you to have raised all of these issues before I had the panel. I gave you an opportunity to do that. You are not, I know, new to the bar and these issues are not new to the Court, so go ahead.

[DEFENSE COUNSEL]: And to be quite frank, Judge, I didn't think it would be much to do about it because it seems—it doesn't deprive the State of anything and, better yet, it ensures that this young man [will] get a fair trial on these charges.

THE COURT: Well, clearly, the count that the State is bringing is a crime, there's no question about that. And if that information came to the jury's attention, I would give ... an instruction, a curative instruction, so that the jury considers that prior conviction only for the purposes that—

Let me hear from the State.

[PROSECUTOR]: Your Honor, I'd just point out that at this point we're ready to pick a jury. But also, that's one of the crimes that the Defendant is charged with, and I do believe that the jury, as the trier of fact, has to be able to decide that issue. That issue, there will be evidence presented to the jury to support a conviction on that charge the State's proffering, and that it's rightfully before this jury to decide. . . .

[DEFENSE COUNSEL]: It also would require them to prove that he's been convicted of a crime of violence, which means they put in the conviction for robbery [with a] deadly weapon. Now, we'd go to great lengths to keep that from the jury unless a person testifies . . . . I guess what I'm saying, Judge, is what do we gain by sending that to the

jury. It doesn't fairly and accurately-the central issue, whether he had a firearm....

THE COURT: Well, in my estimation, ... that is a question for the jury to determine, whether, in fact, that particular crime has been violated by [appellant] or not, and I would—the suggestion I give to you is that I will instruct the jury again not to consider—for any purpose contrary to Mr. Carter's interest. I would fashion an instruction when the time comes.

Defense counsel continued to urge the trial court not to permit the State to present evidence to the jury regarding appellant's prior conviction for a crime of violence.

THE COURT: [W]hat you're telling me is that the jury should never know—

[DEFENSE COUNSEL]: That's right.

THE COURT:—about it. That's what your argument is, correct?

[DEFENSE COUNSEL]: Yes, ma'am.

THE COURT: That request is denied because I am satisfied that all of the charges that [appellant] is facing should go before the jury.

When the State announced its intention to introduce a certified copy of appellant's prior conviction for robbery with a deadly weapon, a handgun, defense counsel offered to stipulate that appellant had been convicted previously of a crime of violence. The trial court rejected that suggestion, reasoning that such a stipulation would allow the jury to speculate as to what the crime of violence was and possibly conclude that it was "something maybe even worse than robbery [with a] deadly weapon[.]" Ultimately, the trial court permitted the State to introduce redacted docket entries, showing a conviction of robbery with a deadly weapon, but eliminating any mention of a handgun.

As part of its instructions to the jury, the trial court explained:

You have heard evidence that the Defendant has been convicted of a crime. You may consider this evidence in determining the guilt[ ] or innocence of the Defendant with respect to the crime charged of possession of a regulated firearm after having been convicted of a crime of violence. However, you may not consider this evidence in determining the Defendant's guilt[ ] or innocence of the crime of possession of a regulated firearm by a person who is under 21 years of age or of the crime of discharging a firearm within the City of Baltimore.

Appellant took no exception to this instruction at trial. Except to the extent that it refers to his prior crime, appellant does not challenge the validity of this instruction on appeal.[2] After the jury convicted appellant of all three crimes, he filed this appeal.

## DISCUSSION

### I.

### Introducing Evidence Of Prior Conviction For Violent Felony Despite Proffer To Stipulate

Appellant contends that the trial court erred in permitting the State to introduce and disclose to the jury evidence of his prior conviction for robbery with a deadly weapon. He asserts that "[o]nce the defense indicated that it was willing to stipulate to the existence of that conviction, the State had no legitimate need for the evidence." According to appellant, the trial court also erred in declining to weigh the probative value of the evidence against the danger of unfair prejudice it presented to appellant. Even if the trial court did exercise its discretion, appellant contends, its refusal to exclude evidence of the prior conviction constituted an abuse of that discretion because, "[g]iven the defense counsel's willingness to concede

---

**2.** Appellant simply argues that the instruction "failed to eliminate the taint manifest in the admission of ... evidence" of his prior conviction.

the existence of the prior conviction, it was simply unnecessary to apprise the jury of this prejudicial element."

The State counters that the trial court properly exercised its discretion in admitting the evidence and providing a limiting instruction to the jury. The State also points out that appellant "never explained to the trial court, nor does he explain on appeal, how the jury could convict him of a crime where the evidence of one element of that crime (whether stipulated to or proven by docket entry submitted to the court) was not presented to the jury."

Maryland courts never before have considered whether a trial court errs when it refuses to permit a defendant to withhold evidence from the jury by conceding a prior conviction that is an element of the crime charged. In *State v. Broberg*, 342 Md. 544, 559–60, 677 A.2d 602 (1996), the Court of Appeals held that when parties stipulate to a fact to be disclosed to a jury, the question of whether a particular piece of evidence also may be offered to prove the stipulated fact is committed to the discretion of the trial court, which must balance the competing interests of the parties. In *Broberg*, a homicide case, the parties stipulated to the identity of the victim, and the issue was whether the trial court erred in admitting "in life" photographs of the victim. *Broberg*, however, addressed a situation in which the stipulation was disclosed to the jury, and the State still sought to introduce additional facts pertaining to the matter covered by the stipulation. In contrast, here appellant seeks to avoid **all disclosure** of his prior crime to the jury. Thus, this case presents a different issue.

Courts in other jurisdictions that have addressed the issue have reached conflicting results. Some courts hold that a trial court has no authority to withhold such evidence from the jury. Other courts say that the admission of such evidence is within the trial court's discretion, and that the trial court must weigh the risk of unfair prejudice to the defendant against the probative value of such evidence. We review below the cases supporting both views.

## A.

## Cases Holding That A Trial Court Has No Authority To Withhold The Evidence From The Jury

██ Many courts have held that a trial court has no authority to keep evidence of a defendant's prior felony conviction from the jury. In the leading case of *United States v. Collamore*, 868 F.2d 24 (1st Cir.1989), *overruled on other grounds, United States v. Tavares*, 21 F.3d 1 (1st Cir.1994), for example, the United States Court of Appeals for the First Circuit reversed the trial court's grant of a defense motion to bifurcate [3] the defendant's trial on a felon in possession of a firearm charge,[4] holding that the bifurcation order was improper.[5] *See id.* at 27–28. The court explained that

> when a jury [has] neither read the statute setting forth the crime nor [been] told of all the elements of the crime, it may, justifiably, question whether what the accused did was a crime. The present case is a stark example. Possession of a firearm by most people is *not* a crime. A juror who owns or who has friends and relatives who own firearms may wonder why Collamore's possession was illegal. Doubt as to the criminality of Collamore's conduct may influence the jury when it considers the possession element.

*Id.* at 28 (emphasis in original). It further observed that the use of special interrogatories, required in a bifurcation, was

---

**3.** As we discuss in Section IV of this opinion, severance of one count from another (which we call "severance") differs from bifurcation of two elements of a single count (which we call "bifurcation").

**4.** Collamore was charged under 18 U.S.C. section 1202(a)(1). This section subsequently was repealed and re-enacted as 18 U.S.C. section 922(g)(1). *See United States v. Rumney*, 867 F.2d 714, 715 (1st Cir.), *cert. denied*, 491 U.S. 908, 109 S.Ct. 3194, 105 L.Ed.2d 702 (1989).

**5.** As the court explained, the trial court's order would have the jury first consider the evidence regarding the defendant's possession of the weapon; if the jury found that the defendant had possessed the weapon, the jury would then hear the evidence regarding the defendant's prior criminal record. *See United States v. Collamore*, 868 F.2d 24, 26 (1st Cir.1989), *overruled on other grounds, United States v. Tavares*, 21 F.3d 1, 5 (1st Cir.1994).

not favored in criminal cases. *See id.* Although rules permitting special verdicts and separate trials of separate issues in civil trials are included in the Federal Rules Of Civil Procedure, the court recognized that there are no corresponding criminal rules. *See id.* Further, as a general rule, the government has the right to present evidence of an element of the crime even when the defendant offers to stipulate to a particular fact. *See id.*

*United States v. Gilliam,* 994 F.2d 97 (2d Cir.), *cert. denied,* 510 U.S. 927, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993), similarly held that the trial court had no authority to withhold the issue from the jury, finding "virtual judicial unanimity in the belief that the jury must be informed of all the elements of the crime charged." *Id.* at 102. Gilliam was charged with violating a statute prohibiting a convicted felon from possessing a firearm in or affecting commerce. The parties stipulated that Gilliam previously had been convicted of the requisite felony, but Gilliam argued that the trial court erred in not withholding the stipulation from the knowledge of the jury. The trial court reasoned:

> "If the jury were to be told that in order to find him guilty of this crime all they got (sic) to do is find he possessed a gun ... from the, sort of the collective common sense knowledge of hundreds and hundreds of thousands of New Yorkers, the answer to that question in their own minds might be, so what, a lot of people have guns, what's the big deal[?]"

*Id.* at 99.

The Second Circuit examined the nature of prejudice in explaining why Gilliam suffered none.

> "[E]vidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." A prior conviction is not prejudicial where the prior conviction is an element of the crime; rather, it "proves the fact or issue that justified" its admission. [18 U.S.C.] [s]ection 922(g)(1) outlaws possession of a weapon that has travelled

in interstate commerce by an individual previously convicted of certain felonies.

The fact that Gilliam was convicted of a felony is an intrinsic issue in [this] trial, and proof of a prior conviction is necessary for the offense to be substantiated. The fact of Gilliam's prior conviction, therefore, is no more prejudicial than [the police officer's] testimony that the gun was in Gilliam's hand before it was recovered under the car.... Where the prior conviction is essential to proving the crime, it is by definition not prejudicial.

*Id.* at 100 (citations omitted).

The court rejected Gilliam's contention that "there is no harm done if [the defendant] concedes the prior conviction element and proceeds to trial merely on the possession issue." *Id.* at 100. It eloquently explained how bifurcating elements of the prior conviction would interfere with the jury's role as the arbiter of community values.

Gilliam's proposal violates the very foundation of the jury system. It removes from the jury's consideration an element of the crime, leaving the jury in a position only to make findings of fact on a particular element without knowing the true import of those findings.... Gilliam is not charged with mere possession of a weapon, but with possession by a convicted felon. The jury speaks for the community in condemning such behavior, and it cannot condemn such behavior if it is unaware of the nature of the crime charged.

Gilliam misunderstands the role of the jury in a criminal trial. Our constitution guarantees the accused the right of a trial by a jury of his peers, primarily in order to ensure that the accused is judged by prevailing community mores. As Judge Learned Hand stated, the institution of the jury "introduces a slack into the enforcement of law, tempering its rigor by the mollifying influence of current ethical conventions." As representatives of the people, the jurors can rebuke the accused for violation of community standards, morals, or principles. *See, e.g., Witherspoon v. Illinois,* [391

U.S. 510, 519 n. 15, 88 S.Ct. 1770, 1775 n. 15, 20 L.Ed.2d 776 (1968) ] ("One of the most important functions any jury can perform ... is to maintain a link between contemporary community values and the penal system....). The jury is the oracle of the citizenry in weighing the culpability of the accused, and should it find him guilty it condemns him with the full legal and moral authority of the society.... It is unnecessary to engage in an extensive dialogue on jury nullification or to summarize the Founding Fathers' belief in the right of the jury to say "no." It is only necessary to discern Congressional intent and to understand the nature and function of a jury, to wit: to be informed of the nature of the crime, as well as to find the defendant guilty of the offense at issue .... Without full knowledge of the nature of the crime, the jury cannot speak for the people or exert their authority. If an element of the crime is conceded and stripped away from the jury's consideration, the jurors become no more than factfinders.

*Id.* at 100–01 (some citations omitted).

The court also rejected the contention that the situation was analogous to Federal Rule of Evidence 404(b).[6] According to the court, "[t]here is a significant difference ... between a rule formulated to limit the admissibility of potentially prejudicial evidence and a rule that eliminates an element of a crime legislated by Congress." *Id.* at 102.[7]

---

**6.** Fed.R.Evid. 404(b) provides:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**7.** Although *Collamore* involved a bifurcation order and *Gilliam* involved a stipulation, appellate courts appear to have treated those situations as involving the same issue: whether the trial court could withhold

The Ninth Circuit reached the same result in *United States v. Barker,* 1 F.3d 957 (9th Cir.1993), *amended on denial of rehearing,* 20 F.3d 365 (9th Cir.1994).

> Any other holding would lead to an impermissible result if the jury did not return a guilty verdict on the possession portion of the crime. The government would be precluded from proving an essential element of the charged offense, and the [trial] court would breach its duty to instruct the jury on all the essential elements of the crime charged.

*Id.* at 365–66 (footnote omitted). Quoting from *Collamore,* the *Barker* Court also stated that the trial court's bifurcation order created an unfair danger of jury confusion. *See id.* at 366. Limiting the jury's consideration of the prior felony element, the court explained, was "contrary to the presumption against special verdicts in criminal cases." *Id.* According to the court, the bifurcation order prevented the government from having its case decided by a jury, and changed the nature of the charged crime. *See id.*

Later, however, in *United States v. Nguyen,* 88 F.3d 812, 818 (9th Cir.), *cert. denied,* 519 U.S. 986, 117 S.Ct. 443, 136 L.Ed.2d 339 (1996), the Ninth Circuit stated that it "review[s] for abuse of discretion the [trial] court's refusal to bifurcate the possession of the gun element from the prior conviction element." Nevertheless, in affirming Nguyen's convictions, the court stated that because Nguyen had "failed to show that he is a member of a suspect class or that there [had] been a violation of a fundamental right," "the rule prohibiting bifurcation of the possession of a gun element from the felon status element will be upheld upon a showing of 'some fair relationship to a legitimate public purpose.' " *Id.* The court cited the reasons set forth in *Barker* as providing the legitimate public purposes. *See id.*

Other federal circuits also have adopted the *Collamore* Court's reasoning. In *United States v. Milton,* 52 F.3d 78, 81

---

evidence of a prior conviction and ask the jury to render a verdict on the issue of possession alone. *See Collamore,* 868 F.2d at 26–27; *United States v. Gilliam,* 994 F.2d 97, 101–02 (2d Cir.), *cert. denied,* 510 U.S. 927, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993).

(4th Cir.), *cert. denied,* 516 U.S. 884, 116 S.Ct. 222, 133 L.Ed.2d 152 (1995), the defendant stipulated to his prior conviction and moved *in limine* to prevent the jury from hearing evidence of that conviction. *See Milton,* 52 F.3d at 80. The trial court denied his motion. *See id.* The Fourth Circuit held that the denial was not reversible error. *See id.* at 81. It reasoned that the jury must be informed of all the elements of the crime charged, and that limiting the jury's consideration of a required element would require a special verdict. *See id.* Removing the prior felony element from the jury's consideration, the court concluded, "prevent[ed] the government from having its case decided by the jury, and changed 'the very nature of the charged crime.' " *Id.* (quoting *Barker,* 20 F.3d at 366).

In *United States v. Koskela,* 86 F.3d 122, 125–26 (8th Cir.1996), the Eighth Circuit rejected the defendant's contention that the trial court erred in refusing to exclude evidence of his prior criminal record until the jury had found that he had possessed a firearm. Similarly, the Tenth Circuit found *Collamore* and *Barker* persuasive in *United States v. Dean,* 76 F.3d 329, 332 (10th Cir.1996), and affirmed the trial court's decision not to bifurcate the prior felony issue from the possession issue. *See also United States v. Birdsong,* 982 F.2d 481, 482 (11th Cir.), *cert. denied,* 508 U.S. 980, 113 S.Ct. 2984, 125 L.Ed.2d 680 (1993).

State courts and the District of Columbia also have concluded that, in felon-in-possession cases, bifurcation of the prior conviction element from the possession element is inappropriate. In *Goodall v. United States,* 686 A.2d 178 (D.C.1996), the defendant requested that the court sever the ex-felon count from the other counts against him, or, in the alternative, permit a bench trial of the felony element of the felon-in-possession charge or allow him to stipulate to his guilt on the ex-felon count if the jury returned a guilty verdict on the other counts. *See id.* at 180. In rejecting the defendant's contention that the trial court had abused its discretion in denying his bifurcation request, the court stated: "We are not

aware of any precedent that would justify such a bifurcation of a criminal charge, trying certain elements to the bench and the remaining elements to the jury." *Id.* at 183. The court further noted that Goodall's other suggestion would have been unenforceable because a defendant cannot be forced to plead guilty. *See id.* at 184.

In *Spearman v. Indiana,* 744 N.E.2d 545 (Ind.App.), *transfer denied,* (Ind.2001), the Indiana Court of Appeals found persuasive *Collamore* and other federal cases holding that bifurcation was not permissible. *See id.* at 548–49. According to the court, evidence of the prior felony was "essential to the proceeding," and its prejudicial effect was minimized by allowing the defendant to stipulate to his prior conviction of the underlying felony. *See id.* at 550.

In *Alaska v. McLaughlin,* 860 P.2d 1270 (Alaska Ct.App. 1993), McLaughlin was charged with being a felon in possession of a concealable firearm. McLaughlin conceded the existence of a prior conviction, and the trial court ruled that evidence of McLaughlin's prior conviction would be withheld from the jury unless it became relevant to a specific disputed issue. *See id.* at 1272. The Court of Appeals of Alaska, ruling on the State's petition to review the order, reversed. The court stated that resolution of the issue depended on whether it viewed it "as a narrow question of evidentiary relevance or a broader question involving policies that are not strictly evidentiary." *Id.* at 1273. Adopting the latter view, the court concluded that the jury's "full understanding of the cause at issue—the wrongdoing for which the accused has been held to answer" was "[e]ssential to [its] ability to fulfill its traditional role." *Id.* at 1277. The court limited its holding, however, to cases "in which the charged offense consists of conduct that is ordinarily lawful, [and] is rendered unlawful only because of the defendant's prior conviction of a felony," as opposed to cases in which the prior conviction element "only enhance[s] the seriousness of the offense." *Id.* at 1278 n. 15.

In *Essex v. Virginia,* 18 Va.App. 168, 442 S.E.2d 707 (1994), the Court of Appeals of Virginia held that the trial court did

not err in permitting the jury to hear evidence that Essex had been convicted of murder. *See id.* at 710. "Where a necessary element of the Commonwealth's case is that the accused is a convicted felon, evidence which tends to directly prove that fact cannot be excluded on the ground that its proof is prejudicial to the accused." *Id. Accord Iowa v. Owens,* 635 N.W.2d 478 (Iowa 2001); *Ohio v. Sweeney,* 131 Ohio App.3d 765, 723 N.E.2d 655 (1999); *see also Ohio v. Smith,* 68 Ohio App.3d 692, 589 N.E.2d 454, 457 (1990), *motion for leave to appeal overruled,* 57 Ohio St.3d 711, 568 N.E.2d 696 (1991)(when prior offense is an essential element of the crime charged, its use is not only proper but required).

The need to present proof of the prior conviction in the same proceeding as that in which the firearm possession is proven is evidenced by the potential effect of the State's not doing so. For example, in *Illinois v. Wright,* 98 Ill.App.3d 1089, 54 Ill.Dec. 530, 425 N.E.2d 42 (1981), the defendant was charged with felony theft, which required a prior conviction for theft. Before trial, defendant agreed to stipulate that she had a prior conviction for theft, and the prosecution agreed not to introduce evidence of that conviction to the jury. She was convicted of misdemeanor theft, but the court sentenced her for the felony theft because of the stipulation. She appealed, arguing that her conviction and sentence for felony theft should be vacated because the jury had not heard evidence of the prior theft. *See id.,* 54 Ill.Dec. 530, 425 N.E.2d at 43. The appellate court agreed. *See id.,* 54 Ill.Dec. 530, 425 N.E.2d at 45. The Illinois statute has since been amended to eliminate the need for such proof. *See Illinois v. Jennings,* 181 Ill.App.3d 439, 130 Ill.Dec. 185, 537 N.E.2d 6, 7 (1989).

In *Ohio v. Nievas,* 121 Ohio App.3d 451, 700 N.E.2d 339, *appeal dismissed,* 79 Ohio St.3d 1505, 684 N.E.2d 89 (1997), the defendant had moved to bifurcate the issues before trial so that his prior conviction would be tried to the court rather than the jury. The court granted the motion and permitted the defendant to stipulate to the existence of the prior convic-

tion outside the presence of the jury. *See id.* at 343. On appeal, the defendant contended that he was deprived of his right to a jury trial because an essential element of his case had been tried to the bench without a valid jury trial waiver. In this case, however, the appellate court rejected the defendant's contention, stating that "while it may have been error for the trial court to bifurcate proof of [the defendant's] prior conviction from the remainder of the elements of the charged offenses, it was [the defendant] who requested the bifurcation[.]" *Id.* at 343. "Under the invited-error doctrine," it reasoned, "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *Id.*

## B.

### Cases Holding That The Admission Of The Prior Crime Element Is A Matter Of Discretion

A small minority of federal and state courts have held that whether to permit the jury to learn that the defendant has a prior conviction is a matter of discretion for the trial court. *Minnesota v. Davidson,* 351 N.W.2d 8 (Minn.1984), provides the most clear-cut enunciation of the minority rule. There, the Minnesota Supreme Court concluded that the trial court erred in not permitting the defendant to stipulate that he had a prior conviction of a crime of violence. *See id.* at 12.

> We believe that generally in a prosecution for being a felon in possession of a weapon the defendant should be permitted to remove the issue of whether he is a convicted felon by stipulating to that fact. In the vast majority of such cases the potential of the evidence for unfair prejudice clearly outweighs its probative value. However, the door should be left open so that in appropriate cases where the probative value of the evidence outweighs its potential for unfair prejudice, the evidence may be admitted.

*Id.* at 11.

The correct approach, according to the Minnesota court, would have been "to compare the potential of the evidence for unfair prejudice with the relevance of the evidence to issues

other than the issue to which the stipulation relates." *Id.* at 11–12. The jury should have been instructed that the defendant had stipulated that under Minnesota law he was not entitled to possess a pistol, and that it should direct its attention to whether the State had established the requisite possession. *See id.* at 12. Nonetheless, the court concluded, without elaboration, that the error was "not so prejudicial as to require reversal" of the defendant's convictions. *See id.* at 12.

Wisconsin also has held that whether to accept the defendant's admission that he has two or more prior convictions is a matter within the trial court's discretion, and the State has no absolute right to prove the prior convictions by evidence. *See Wisconsin v. Alexander,* 214 Wis.2d 628, 643, 571 N.W.2d 662, 668 (1997). Alexander was convicted of operating a motor vehicle under the influence of alcohol, under a statute having as an element the requirement that the defendant have two or more prior convictions. The Wisconsin Supreme Court ruled that the trial court should determine, under Wisconsin's evidentiary rule parallel to Federal Rule of Evidence 403,[8] whether the unfair prejudicial effect of the State's evidence outweighed its probative value. *See id.* at 641–44, 571 N.W.2d at 668.

> Where prior convictions is an element of the charged crime, the risk of a jury using a defendant's prior convictions as evidence of his or her propensity or bad character is great. And where the prior offense is similar or of the same nature or character as the charged crime, the risk of unfair prejudice is particularly great.

*Id.* at 642–43, 571 N.W.2d at 668.

Because the nature of the offense charged was similar to the defendant's prior offenses, the court held that the probative

---

**8.** Md. Rule 5–403 also mirrors Federal Rule of Evidence 403, and provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

value of introducing the offense, even by stipulation or admission of the defendant, was outweighed by the danger of unfair prejudice.

> Weighing the probative value of the evidence of the defendant's prior convictions, suspensions or revocations against the unfair prejudicial effect to the defendant, where the sole purpose of the evidence is to prove the status element, we conclude that the probative value is virtually nil. [Moreover,] the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Because the prior convictions are of the same nature and character of the charged offense, the jury is likely to engage in propensity or bad character reasoning.

*Id.* at 651, 571 N.W.2d at 671–72.

*United States v. Mangum,* 321 U.S.App.D.C. 348, 100 F.3d 164 (1996), appeared to blend the issues of severance and bifurcation, suggesting that both are discretionary. There, the defendant was convicted of unlawful possession of a firearm by a felon. The trial court, at Mangum's request, severed the felon-in-possession count from the other counts of the indictment. It declined to bifurcate the elements of the felon-in-possession count so that the jury would decide possession before it heard about the prior conviction, and Mangum appealed. The District of Columbia Circuit framed the question as whether the trial court had shown " 'sufficient scrupulous regard for the defendant's rights.' " *Id.* at 171 (citation omitted). It concluded that "the [trial] court did not abuse its discretion by severing Count One from the other counts and trying Count One first, nor did it abuse its discretion by deciding not to bifurcate the ex-felon element and the other elements of Count One." *Id.* Although, in addressing bifurcation, the court spoke of the trial court's "discretion," it relied on cases holding that the trial court had no discretion. It observed that "[a] number of our sister circuits have reached the same conclusion on this issue," and cited *Collamore, Gilliam,* and *Barker,* all of which held that the trial court did not have authority to withhold evidence of the defendant's prior convictions from the jury. *See id.* at 171 n. 11.

## C.

### Resolving The Issue Under Maryland Law

Some of the rationales for concluding that bifurcation is impermissible, set forth in the cases discussed in Section I.A. of this opinion, carry less weight under Maryland law. To the extent that bifurcation is disfavored in a criminal case because it requires a special verdict, it would not seem to be as disfavored under our law as it is under federal law. For example, in *Dixon v. State*, 364 Md. 209, 244 n. 33, 772 A.2d 283 (2001), the Court of Appeals recommended that trial judges use special verdicts to avoid ambiguity regarding the theory under which a defendant had been convicted of first degree assault.

Moreover, it is unclear whether, under Md. Rule 4–325, it would constitute reversible error for the trial court to fail to instruct the jury on all elements of the offense with which appellant was charged. Indeed, an instruction such as that suggested by the court in *Davidson* might suffice. *See Davidson*, 351 N.W.2d at 12 (instruction that defendant stipulated he was not entitled to possession and that focus is on whether State established possession). Further, the fact that the State might not have its case decided by the jury is not an issue here, because, unlike its federal counterpart, Md. Rule 4–246(a) does not require the State to consent to a jury waiver. *Compare* Md. Rule 4–246(a)("a defendant having a right to trial by jury shall be tried by a jury unless the right is waived .... If the waiver is accepted by the court, the State may not elect a trial by jury") *with* Fed. R.Crim. Proc. 23(a)("Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government").

Despite these differences, we find persuasive the rationales of *Collamore* and *Gilliam* respecting the nature of prejudicial evidence, and the potentially detrimental effect on the jury process that bifurcation might have. As both *Collamore* and *Gilliam* have stated, when a prior conviction is an element of the crime charged, it is not prejudicial to the

defendant. *See Collamore,* 868 F.2d at 28; *Gilliam,* 994 F.2d at 100. *Accord Barker,* 20 F.3d at 366; *Arizona v. Petersen,* 195 Ariz. 9, 985 P.2d 494, 496 (1999), *cert. denied,* 528 U.S. 1161, 120 S.Ct. 1174, 145 L.Ed.2d 1083 (2000); *South Carolina v. Hamilton,* 327 S.C. 440, 486 S.E.2d 512, 515–16 (App.1997), *cert. denied,* 525 U.S. 904, 119 S.Ct. 239, 142 L.Ed.2d 196 (1998).

Due to the prevalence of **legal** firearms, moreover, a jury might be hesitant to convict a person of a possession of a firearm charge without knowing the special circumstances involved—that the defendant previously had committed a crime of violence. As the *Collamore* Court said, "a juror who owns or who has friends or relatives who own firearms may wonder why [appellant's] was illegal." *Collamore,* 868 F.2d at 28. Or, as the trial judge in *Gilliam* phrased it, the jury might be thinking, "what's the big deal[?]" *Gilliam,* 994 F.2d at 99.

A juror's learning that a law-abiding citizen possesses a firearm, on the one hand, and a juror's learning that a person convicted of a crime of violence does so, on the other, would likely call into play markedly different moral perceptions on the part of a juror. It is likely that a juror will readily perceive that possession of a firearm by a person convicted of a crime of violence poses a risk to society that the legislature properly declared unlawful. *See Johnson v. State,* 67 Md.App. 347, 378, 507 A.2d 1134, *cert. denied,* 307 Md. 260, 513 A.2d 314, *cert. denied,* 479 U.S. 993, 107 S.Ct. 594, 93 L.Ed.2d 595 (1986)(section 445(d) "is intended to prevent those who have already demonstrated a propensity for violence, as evidenced by a conviction of a crime of violence, from possessing hand-guns").

Felon in possession of a firearm cases differ from those involving convictions for driving under the influence of alcohol, in which the prior offenses are an element of the statute, such as *Alexander.* In the latter, the commission of the current alcohol offense, without reference to any earlier offenses,

carries with it the immediate moral perception that the conduct is dangerous and criminal.

Because we rest our decision in part on the jury's perceptions about the legality and morality of possessing firearms, we pause here to review the Maryland law on possessing and transporting handguns and other regulated firearms. Maryland Code (1974, 1996 Repl. Vol, 2001 Cum. Supp), Art. 27 section 36B governs wearing, carrying, and transporting handguns.[9] A "handgun," as defined in Art. 27 section 36F(b), is "any pistol, revolver, or other firearm capable of being concealed on the person, including a short-barreled shotgun and a short-barreled rifle[.]"

Art. 27 section 445 governs the sale, transfer, and possession of "regulated firearms." The term "regulated firearms" is statutorily defined to include both handguns and "assault weapons," a class that includes an extensive list of specific weapons. *See* Art. 27 § 441.

There is no general prohibition against regulated firearms. Rather, Art. 27 section 445, entitled "Restrictions on sale, transfer and possession of regulated firearms," simply prohibits a dealer or person from selling, renting, or transferring a regulated firearm to any person falling into specified risk categories. For example, it is illegal for a dealer or person to sell, rent, or transfer a regulated firearm to a person whom he "knows or has reasonable cause to believe" has been convicted of any of several enumerated crimes, is "[a]ddicted to or a habitual user of any controlled dangerous substance," or is a "habitual drunkard." *See* Art. 27 § 445(b)(1)-(4). Thus, with respect to a firearm that is not a handgun, its possession or transportation by most persons may be perfectly legal.

With respect to handguns, moreover, people can maintain them for legitimate use in their homes or their businesses. *See* Art. 27 § 36B(c)(4). Although section 36B provides that a

---

9. Officer Marriott testified that appellant was shooting a handgun, although he did not provide any further description of the gun. The State, however, did not charge appellant under section 36B with wearing, possessing, or transporting a handgun.

person shall not wear, carry, or transport any handgun, a person may do so if he or she has a permit. *See* Art. 27 § 36B(c)(2).[10] The Secretary of the State Police is required to issue a permit to carry a handgun to a person over 18 who has not suffered certain disqualifying events or conditions, and who "[h]as, based on the results of investigation, good and substantial reason to wear, carry, or transport a handgun[.]" Art. 27 § 36E(a). According to the statute, the phrase " 'good and substantial reason' ... shall be deemed to include a finding that such permit is necessary as a reasonable precaution against apprehended danger."[11] Art. 27 § 36E(a)(6).

According to a Fiscal Note prepared in 1999 by the Department of Legislative Services to support a legislative bill,[12] there were 25,171 persons licensed to carry a handgun in

---

**10.** Even without a permit, a person may carry a handgun on his person "while transporting the same to or from the place of legal purchase or sale, or between bona fide residences of the individual, or between his bona fide residence and his place of business, if the business is operated and substantially owned by the individual, or to or from any bona fide repair shop." Art. 27 § 36B(c)(3). In addition, without a permit, a person may wear, carry, and transport a handgun used "in connection with a target shoot, formal or informal target practice, sport shooting event, hunting, a Department of Natural Resources sponsored firearms and hunter safety class, trapping, dog obedience training class or show or any organized military activity while engaged in, on the way to, or returning from any such activity." *Id.* With respect to the exceptions contained in section 36B(c)(3), "while traveling to or from any such place or event referred to ..., a handgun shall be unloaded and carried in an enclosed case or enclosed holster." *Id.*

**11.** The term "good and substantial reason" has only been interpreted on one occasion. In *Snowden v. Handgun Permit Review Bd.*, 45 Md.App. 464, 413 A.2d 295 (1980), we rejected Snowden's contention that "the phrase 'reasonable precaution against apprehended danger' is the sole criterion for defining 'good and substantial reason.' " Rather, we held that "the phrase 'good and substantial reason' ... means something more than personal anxiety over having one's name connected publicly with anti-drug and anti-crime activities" or "the concern an individual may have because he has been told by another" of some general threat of harm from unidentified individuals. *See id.* at 469, 413 A.2d 295.

**12.** This bill, entitled the "Self–Defense Act of 1999," proposed removal of the current licensure requirement that the applicant have a "good and substantial reason" for obtaining a license. The bill did not pass.

Maryland.[13] Thus, although it may not be routine to obtain a handgun license in Maryland, such licenses are not rare.

The presence of legal handguns, as well as other firearms that do not require permits supports the notion, advanced in *Collamore, Gilliam,* and other cases, that if jurors do not learn why a defendant is criminally charged for possessing a firearm, they might be hesitant to convict. Such hesitation, if based on the non-disclosure of one element of the crime, rather than doubt about the evidence of possession, would undermine the jury system.

For these reasons, we hold that, because appellant was charged under Art. 27 section 445(d) with possession of a regulated firearm by one previously convicted of a crime of violence, the State had a right to disclose to the jury the fact that appellant previously was convicted of a crime of violence. This conclusion does not completely resolve this case, however, because there remains the issue of whether the trial court erred in disclosing to the jury the nature of appellant's prior conviction, rather than just the fact of conviction. Before we address that question, however, we must clarify precisely what we are holding, and what we are not holding.

## D.

### Severance

Courts are more concerned about the prejudicial effect of introducing evidence of a defendant's prior crime when the defendant is also charged with other crimes. This problem arises when the appellate court is considering whether the trial court erred in refusing to sever a felon-in-possession count from other counts. *See Joshua,* 976 F.2d at 844. We are not considering that issue here, because appellant did not

---

**13.** Various law enforcement personnel are permitted to wear, carry, and transport handguns while they are "on active assignment engaged in law enforcement." Art. 27 § 36(b). Thus, the number of license holders identified by Legislative Reference would not include law enforcement personnel unless they applied for and obtained a license for private use.

pursue a severance of his felon-in-possession count from the other two weapons charges, as he could have under Md. Rule 4–253(c).

Although a general motion to sever was one of the many items included in appellant's pre-trial omnibus motion,[14] appellant failed to specify that he sought to sever count two (possession of a regulated firearm by a person under the age of twenty-one) or count three (unlawfully discharging a firearm within the City of Baltimore) from count one (felon in possession of a firearm). Further, after the filing of his omnibus motion, appellant failed to bring his severance request to the trial court's attention or pursue it in a more particularized way. Accordingly, the trial court never ruled on the issue of severance. Appellant's failure to bring any severance request to the attention of the trial court constituted waiver of his request to sever. This issue is not preserved for appellate review. *See Klauenberg v. State,* 355 Md. 528, 556–57, 735 A.2d 1061 (1999)(when defendant included motion for a speedy trial in omnibus pre-trial motion, but did not raise the issue again until appeal, speedy trial issue was not preserved).

Notwithstanding this waiver, we briefly will discuss severance law [15] as it would apply in this case, lest the ground for our decision set forth in Section I.C. of this opinion be misinterpreted as applying to severance issues. Courts have sometimes blended the issue of severance of one count from another, with the issue of bifurcation of the elements of a single count. *See, e.g., Mangum,* 100 F.3d at 164 (discussing severance of counts and bifurcation of elements within a single count, and blending the two distinct concepts). We wish to make clear that the two are distinct.

---

**14.** In this motion, he said: "Defendant moves that he be tried separately for each offense ... and respectfully avers that to proceed otherwise would be clearly prejudicial to Defendant's right to due process, and a flagrant violation of the Defendant's Constitutional and other legal rights."

**15.** We have not attempted a comprehensive review of severance cases.

■■ When **unrelated** counts are joined in a case to be tried before a jury, Maryland imposes a strict severance requirement. If there has been such joinder, and a motion for severance is made, the trial court **must** sever if evidence that is admissible as to one count is inadmissible as to another. *See McKnight v. State,* 280 Md. 604, 612, 375 A.2d 551 (1977); *see also Kearney v. State,* 86 Md.App. 247, 253, 586 A.2d 746, *cert. denied,* 323 Md. 34, 591 A.2d 250 (1991)("where the evidence at a joint jury trial is not mutually admissible because of 'other crimes' evidence, there is prejudice as a matter of law which compels separate trials").[16]

■ In ruling on a motion to sever, if evidence is **mutually admissible** with respect to unrelated charges, or if the charges are **closely related,** the court must measure the potential for prejudice to the defendant from the "other crimes" evidence, not only against the probative value of that evidence, but "primarily against the interests of judicial economy" achieved by having the counts tried together. *See Solomon v. State,* 101 Md.App. 331, 347–48, 646 A.2d 1064 (1994), *cert. denied,* 337 Md. 90, 651 A.2d 855 (1995). In weighing the judicial economy factor, the court measures the time and resources of both the court and the witnesses. *See id.* (quoting *McKnight,* 280 Md. at 608, 375 A.2d 551). This determination is a discretionary one, which will be upheld on appeal absent an abuse of discretion. *See id.* at 345, 348, 646 A.2d 1064.

■ In contrast, our holding today is that, in this prosecution under Art. 27 section 445(d), the trial court **did not have discretion** to exclude from the jury the fact that appellant had been convicted previously of a crime of violence. Had the trial court in this case been asked to sever the separate counts, it would not have been required to apply the mutually admissible evidence test because the three counts are so **closely related.**

---

16. In a court trial, on the other hand, a trial judge may deny a severance request even though evidence as to separate charges is not mutually admissible. *See Graves v. State,* 298 Md. 542, 544–50, 471 A.2d 701 (1984).

Indeed, this case closely resembles *Frazier v. State,* 318 Md. 597, 569 A.2d 684 (1990), in which the Court of Appeals held that the trial court did not abuse its discretion in refusing to sever charges of wearing, carrying and transporting a handgun, from charges of possessing a revolver after being convicted of a crime of violence. *See id.* at 612, 569 A.2d 684. In *Frazier,* because the charges were closely related, the presumption of prejudice that applied when unrelated counts were joined was not applicable. *See id.* at 611, 569 A.2d 684. Frazier was required, therefore, to show that he was **improperly** prejudiced by the joinder of the cases. *See id.*

In rejecting Frazier's claim of improper prejudice, the Court explained:

> We cannot conceive of a factual situation which would be less conducive to untoward prejudice than the circumstances here. The convictions go to the elements of the offense. Frazier was caught red-handed in possession of the handgun. Exactly the same evidence as to each charge would support a finding that Frazier unlawfully possessed a handgun, the foundation of both offenses. The only additional testimony as to one charge would be the fact of the prior conviction. As we noted, . . . the trial judge said at the hearing on the motion to sever in denying the motion:
>
>> This man is charged in the same happening, all out of the same happening with possession of a handgun as a felon. . . . I think the jury has a right to know exactly what the facts behind the happening resulting in a charge, all arising out of the same happening at the same time[.]

*Id.* at 611–12, 569 A.2d 684. The Court refused to conclude that the jury, under the circumstances, would have disobeyed the curative instruction given by the trial court. *See id.* at 612, 569 A.2d 684.

The same situation is presented here. All of appellant's charges arose out of a single incident. Appellant was also "caught red-handed" in the act of firing a handgun into the air. All three of the firearms offenses charged against appellant depended upon proof of this single act, with each

having one additional element of proof. In count one, the State had to prove that appellant previously had been convicted of a crime of violence; in count two, the State had to prove that appellant was a minor; and in count three, the State had to prove that the incident occurred in Baltimore City. These additional elements in counts two and three were easily proven, and not subject to meaningful debate. Because there was no controversy about these facts, evidence of appellant's prior conviction of a crime of violence under count one was not unduly or unfairly prejudicial to his defense against counts two and three. Thus, although we do not decide the severance issue, we conclude that, had it been raised, denial of the motion would have been proper.

## II.

### Disclosure Of The Nature Of The Offense

Whether to disclose the **nature** of the prior conviction to the jury in addition to the **fact** of the prior conviction presents a different question from that addressed in Section I of this opinion. At the trial, after the court ruled that the jury must hear about the fact of his prior crime, appellant offered to stipulate that he had been convicted of a crime of violence, without specifying that it was robbery with a deadly weapon. The prosecution declined to accept this stipulation and offered instead a certified copy of his conviction. The trial court permitted the State to introduce redacted docket entries, showing a conviction of robbery with a deadly weapon, but eliminating any mention of a handgun.

On appeal, appellant does not specifically discuss the distinction between offering evidence of a prior conviction for a crime of violence, and offering evidence that it was a conviction for robbery with a deadly weapon. He makes a general assertion, however, that we consider sufficient to preserve the point for review:

> [E]vidence of Carter's prior **robbery** conviction would only poison the minds of the jury so that it could not be established whether the jurors reached their verdict after

an objective evaluation of the evidence, or because they presumed that an individual with **such record** was probably likely to have committed the offense at issue. (Emphasis added.)

### A.

### The Supreme Court's Decision In *Old Chief*
### *v. United States,* And Its Progeny

The United States Supreme Court addressed this issue, under analogous federal law, in *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). In *Old Chief,* the defendant was convicted of assault with a dangerous weapon, using a firearm in relation to a crime of violence, and possession of a firearm by a convicted felon.[17]

Before trial, the defendant moved for an order prohibiting the government from mentioning or offering into evidence any testimony regarding his prior criminal conviction for assault causing serious bodily injury, except to state that he had been convicted of a crime punishable by imprisonment exceeding one year. Old Chief offered to stipulate that he was convicted of a prior felony, but the government refused the stipulation, and insisted upon its right to introduce the judgment record for the prior conviction. The trial court agreed with the government. Old Chief was convicted, his conviction was affirmed by the Ninth Circuit Court of Appeals, and the Supreme Court granted certiorari.

Old Chief did not contend before the Supreme Court that disclosure of the mere fact of his prior conviction to the jury was prejudicial. Rather, he argued that "revealing the name and nature of his prior assault conviction would unfairly tax the jury's capacity to hold the Government to its burden of proof beyond a reasonable doubt on current charges of assault, possession, and violence with a firearm[.]" *Id.,* 519 U.S.

---

17. In this latter offense, Old Chief was charged under 18 U.S.C. section 922(g)(1), which prohibits possession of a firearm by anyone with a prior felony conviction.

at 175, 117 S.Ct. at 648. He offered to " 'solve the problem by stipulating, agreeing and requesting the Court to instruct the jury that he has been convicted of a crime punishable by imprisonment exceeding one (1) year.' " *Id.* Old Chief also contended that his "offer to stipulate to the fact of the prior conviction rendered evidence of the name and nature of the offense inadmissible under Rule 403 of the Federal Rules of Evidence, the danger being that unfair prejudice from that evidence would substantially outweigh its probative value." *Id.*

In a five to four decision, the Supreme Court held that the trial court erred in allowing the prosecution to introduce Old Chief's order of judgment and commitment, which disclosed that Old Chief " 'did knowingly and unlawfully assault Rory Dean Fenner, said assault resulting in serious bodily injury,' for which Old Chief was sentenced to five years' imprisonment." *Id.*, 519 U.S. at 175, 177, 117 S.Ct. at 647–48. In an opinion written by Justice Souter, the majority began its analysis by recognizing that the record of conviction was relevant to the prior-conviction element of the crime, and that its evidentiary relevance under Federal Rule 401 was not "affected by the availability of alternative proofs of the element[.]" *Id.*, 519 U.S. at 178–79, 117 S.Ct. at 649.

The Court agreed with Old Chief that the admissibility of this evidence was a matter of discretion for the trial court under Fed.R.Evid. 403,[18] and its exclusion "must rest not on the ground that the other evidence has rendered it 'irrelevant,' but on its character as unfairly prejudicial, cumulative or the like, its relevance notwithstanding." *Id.*, 519 U.S. at 179, 117 S.Ct. at 650. The probative value of the evidence, however, was "discounted" by the stipulation in which the defendant admitted the prior felony conviction. *See id.*, 519 U.S. at 191, 117 S.Ct. at 655. The majority defined what is meant by the

---

18. Fed.R.Evid. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

term "unfair prejudice," declaring that it "speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged." *Id.*, 519 U.S. at 180, 117 S.Ct. at 650. It agreed that, due to the risk identified by Old Chief, the jury's decision could be based on an improper ground.

> [T]here can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant. That risk will vary from case to case, for the reasons already given, but will be substantial whenever the official record offered by the Government would be arresting enough to lure a juror into a sequence of bad character reasoning. Where a prior conviction was for a gun crime or one similar to other charges in a pending case the risk of unfair prejudice would be especially obvious[.]

*Id.*, 519 U.S. at 185, 117 S.Ct. at 652.

The majority acknowledged that, in general, the prosecution should not be circumscribed in how it tells its story.

> [T]he prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault. . . . The use of witnesses to describe a train of events naturally related can raise the prospect of learning about every ingredient of that natural sequence the same way. If suddenly the prosecution presents some occurrence in the series differently, as by announcing a stipulation or admission, the effect may be like saying, "never mind what's behind the door," and jurors may well wonder what they are being kept from knowing. A party seemingly responsible for cloaking something has reason for apprehension[.]

*Id.*, 519 U.S. at 188–89, 117 S.Ct. at 654. It posited, however, that the defendant's legal status is not typically part of the story that the prosecution needs to tell for two reasons. First,

the defendant's legal status is "dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him." *Id.*, 519 U.S. at 190, 117 S.Ct. at 654–55. Second,

> the choice of evidence for such an element is usually not between eventful narrative and abstract proposition, but between propositions of slightly varying abstraction, either a record saying that conviction for some crime occurred at a certain time or a statement admitting the same thing without naming the particular offense.

*Id.*, 519 U.S. at 190, 117 S.Ct. at 655.

The majority found the jury's need to know about the defendant's legal status quite limited. "The most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission[.]" *Id.*, 519 U.S. at 190–91, 117 S.Ct. at 655.

Justice O'Connor, speaking for the four dissenting justices, opined: "[A] person is not simply convicted of 'a crime' or 'a felony.' Rather he is found guilty of a specified offense . . . . The name and basic nature of petitioner's crime are inseparable from the fact of his earlier conviction and were therefore admissible to prove petitioner's guilt." *Id.*, 519 U.S. at 194, 117 S.Ct. at 657. She criticized the majority opinion for failing to explain "precisely why it constitutes 'unfair prejudice' for the Government to directly prove an essential element of the [felon-in-possession] offense with evidence that reveals the name or basic nature of the defendant's prior conviction." *Id.*, 519 U.S. at 195, 117 S.Ct. at 658. She also accused the majority of "leap[ing] to the conclusion that there can be 'no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant.' " *Id.*, 519 U.S. at 195–96, 117 S.Ct. at 657.[19]

---

**19.** Justice O'Connor also identified other reasons for her dissent, which we have not listed.

The decision in *Old Chief* is not binding on us or other state courts. *See, e.g., State v. Matusky*, 343 Md. 467, 490, 682 A.2d 694 (1996)(Supreme Court decision interpreting analogous federal rule of evidence not binding); *Illinois v. Peete*, 318 Ill.App.3d 961, 252 Ill.Dec. 821, 743 N.E.2d 689, 694, *appeal denied*, 195 Ill.2d 568, 257 Ill.Dec. 895, 754 N.E.2d 1290 (2001)(*Old Chief* not binding because Illinois law applies on evidentiary issue). Since the Supreme Court's decision in *Old Chief*, however, several states have found its rationale persuasive, and have adopted its rule. *See Brown v. Florida*, 719 So.2d 882, 884 (Fla.1998); *Peete*, 252 Ill.Dec. 821, 743 N.E.2d at 694; *Kansas v. Lee*, 266 Kan. 804, 977 P.2d 263, 268 (1999); *Michigan v. Swint*, 225 Mich.App. 353, 572 N.W.2d 666, 677 (1997); *New Jersey v. Alvarez*, 318 N.J.Super. 137, 723 A.2d 91, 99 (App.Div.1999); *Smith v. Texas*, 12 S.W.3d 149, 151–52 (Tex.Ct.App.2000); *Washington v. Johnson*, 90 Wash.App. 54, 950 P.2d 981, 986 (1998). See also the following cases decided prior to *Old Chief*, which adopted the balancing test under Fed.R.Evid. 403 to decide whether the nature of the prior conviction should be admitted: *United States v. Tavares*, 21 F.3d 1, 5 (1st Cir.1994)(en banc); *United States v. O'Shea*, 724 F.2d 1514, 1516–17 (11th Cir.1984).

 We, too, agree with the majority in *Old Chief* that when a defendant's legal status is an element of the crime, and the defendant offers to stipulate and disclose to the jury that legal status, the trial court should perform a Md. Rule 5–403 balancing test before admitting evidence of the name or nature of the previous conviction.[20] It is well established in Maryland that evidence of a defendant's prior crime can tempt the jury into convicting the defendant because he has commit-

---

**20.** In accepting the stipulation from the defendant, we suggest that the court "require the defendant, outside the jury's presence and after consultation with counsel, to personally acknowledge the stipulation and his or her voluntary right to have the State otherwise prove beyond a reasonable doubt the convicted-felon status[.]" *Illinois v. Peete*, 318 Ill.App.3d 961, 252 Ill.Dec. 821, 743 N.E.2d 689, 695, *appeal denied*, 195 Ill.2d 568, 257 Ill.Dec. 895, 754 N.E.2d 1290 (2001); *see Brown v. Florida*, 719 So.2d 882, 889 (Fla.1998).

ted bad acts in the past, rather than because the evidence establishes guilt beyond a reasonable doubt. *See Streater v. State,* 352 Md. 800, 810, 724 A.2d 111 (1999); *see also* Md. Rule 5–404(b)("Evidence of other crimes . . . is not admissible to prove the character of a person in order to show action in conformity therewith"). This potential for unfair prejudice calls into play Md. Rule 5–403, which requires the trial court to decide whether the "probative value is substantially outweighed by the danger of unfair prejudice[.]"

As we indicated in Section I, when parties stipulate to a fact to be disclosed to the jury, the question of whether a particular piece of evidence also may be offered to prove the stipulated fact is committed to the sound discretion of the trial court. *See Broberg,* 342 Md. at 560, 677 A.2d 602. In such instances, the court must balance the incremental probative value of the evidence, as compared to the stipulation, against the potential unfair prejudicial impact of the proffered evidence. *See id.* Although here the prosecution did not agree to accept the defense's offer to stipulate, the potential for prejudice arising from this other crimes evidence is sufficient to invoke the Rule 5–403 balancing test.

While proof of the prior conviction is probative because it is an element of the crime, the jury's need to know the name or nature of the prior offense is limited. Once the jury knows that the offense was committed, the specific nature of the offense has significantly discounted probative value. *See Old Chief,* 519 U.S. at 191, 117 S.Ct. at 655. Thus, the discretion afforded trial judges under Md. Rule 5–403 is circumscribed in these circumstances because the absence of probative value often will be outweighed by the potential for unfair prejudice.

We are not persuaded by the views of the *Old Chief* dissenters. The dissent's view that "a person is not simply convicted of 'a crime' or 'a felony,' " but rather a specific offense, seems an empty technical distinction that is at odds with the equitable approach of Fed.R.Evid. 403, which calls on a judge to balance the competing substantive interests of the litigants. Nor do we agree that the majority "leap[t] to the

conclusion" that evidence regarding the nature of the prior offense carries a risk of unfair prejudice. The majority, rather, relied on the well-accepted proposition that evidence of bad character " 'is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.' " *Id.,* 519 U.S. at 181, 117 S.Ct. at 650–51 (citation omitted); *see Streater,* 352 Md. at 810, 724 A.2d 111; Md. Rule 5–404(b).

## B.

### The Trial Court's Decision To Disclose
### The Nature Of The Offense

In this case, the trial court declined to take appellant up on his offer to stipulate that he was previously convicted of a "crime of violence." Instead, it allowed the prosecution to introduce evidence that appellant had been convicted of robbery with a deadly weapon. It excluded, however, any mention that the robbery was committed with a handgun. We conclude that the trial court performed the necessary balancing test and did not abuse its discretion in making this decision.

Although evidence that a defendant has been convicted of an armed robbery, viewed in isolation, would certainly carry some risk of prejudice, under the circumstances of this case that risk was minimal. This is because the stipulation offered by appellant to meet the elements of Art. 27 section 445(d) itself informed the jury that appellant had been convicted of a "crime of violence." If the jury were persuaded to convict appellant based on "a sequence of bad character reasoning," it would be just as likely to convict him based on knowledge that he had committed a "crime of violence" as on knowledge that he had committed an armed robbery.

The trial court reasoned that informing the jury about the "crime of violence" would allow the jury to speculate as to what the crime of violence was, and possibly conclude that it was "something maybe even worse than robbery [with a]

deadly weapon[.]" In doing so, it implicitly performed the Rule 5–403 balancing test, by implicitly concluding that the probative value was high, and the risk of prejudice was minimal. A trial court is not required to state explicitly that it applied the Rule 5–403 balancing test. *See Broberg*, 342 Md. at 564 n. 14, 677 A.2d 602.

The rationality of this approach is evident when we consider how a "crime of violence" is defined. A "crime of violence" is defined in Art. 27 section 643B as

abduction; arson in the first degree; kidnapping; manslaughter, except involuntary manslaughter; mayhem and maiming ...; murder; rape; robbery under § 486 or § 487 of [Article 27]; carjacking or armed carjacking; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault in the first degree; and assault with intent to murder, assault with intent to rape, assault with intent to rob, assault with intent to commit a sexual offense in the first degree, and assault with intent to commit a sexual offense in the second degree[.]

A charge of robbery with a deadly weapon, in terms of its potential to offend the jury, falls close to the bottom of this list of "crime[s] of violence." It is likely to be less offensive than abduction, arson in the first degree, kidnapping, manslaughter, mayhem and maiming, murder, rape, armed carjacking, assault with intent to commit a sexual offense in the first or second degree, or attempts to commit any of those offenses. And it is no more offensive than the four remaining crimes—first degree assault; assault with intent to rob, non-armed carjacking, and use of a handgun in the commission of a felony or other crime of violence. Indeed, informing the jury about the armed robbery may have been more beneficial to appellant than utilizing the generic "crime of violence."

Although the jury, in the absence of an instruction, is not likely to be aware of the technical definition of a "crime of violence," it certainly is aware that those types of crimes exist.

The term "crime of violence" carries with it a common sense meaning that would suggest that robbery, rape, murder, kidnapping, carjacking, arson, and the like are possibilities. The jury might consider that a person who committed any of these violent crimes is the type of person who might be in possession of a firearm. For the reasons set forth in Section I, however, we have held that proof that the crime of violence was committed is admissible as an element of section 445(d). We simply cannot see how a jury is any more likely to be swayed toward conviction because, rather than hearing that appellant committed a prior "crime of violence," it learns that he committed an armed robbery.

The majority in *Old Chief* opined that the risk of prejudice would be "substantial whenever the official record offered by the Government would be arresting enough to lure a juror into a sequence of bad character reasoning." *Old Chief,* 519 U.S. at 185, 117 S.Ct. at 652. In *Old Chief,* the statute required that the prosecution prove that the defendant " 'ha[d] been convicted ... of, a crime punishable by imprisonment for a term exceeding one year,' " but excluded " 'any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices,' " as well as misdemeanors punishable by a term of two years of less. *See id.,* 519 U.S. at 174–75, 117 S.Ct. at 647 (quoting 18 U.S.C. § 921(a)(20), § 922(g)(1)). Old Chief sought to have the government simply introduce a document in which he agreed that "he has been convicted of a crime punishable by imprisonment exceeding one (1) year." *Id.,* 519 U.S. at 175, 117 S.Ct. at 648. He also sought a jury instruction that

> "The phrase 'crime punishable by imprisonment for a term exceeding one year' generally means a crime which is a felony. The phrase does not include any state offense classified by the laws of that state as a misdemeanor and punishable by a term of imprisonment of two years or less and certain crimes concerning the regulation of business practices."

*Id.*, 519 U.S. at 175–76, 117 S.Ct. at 648. Old Chief's proposed stipulation and jury instruction were rejected, and the prosecution introduced a document showing that his felony was an assault that resulted in serious physical injury.

Thus, the evidence introduced by the government in *Old Chief* was significantly "more arresting" and more likely to "lure a juror into a sequence of bad character reasoning," *id.*, 519 U.S. at 185, 117 S.Ct. at 652, than evidence of a crime punishable by imprisonment exceeding one year, which could have included non-violent theft and other non-violent crimes. In contrast, here, the official record of appellant's crime is no more "arresting" than the generic stipulation offered by appellant to meet the statutory definition.[21] *Cf. Arizona v. Peterson*, 195 Ariz. 9, 985 P.2d 494, 497 (1999)(distinguishing *Old Chief* on grounds that, in *Old Chief*, the government did not have to show the nature of the felony to establish the charged offense); *South Carolina v. Hamilton*, 327 S.C. 440, 486 S.E.2d 512, 515 (App.1997)(admitting evidence of two prior burglaries was not error because, unlike *Old Chief*, even if prosecution had stipulated that defendant "had the legal status to be charged with first degree burglary, the jury would have known he had committed either two prior burglaries or housebreakings when [it was] instructed as to the elements of the crime").

Further, although in this case both the prior conviction and the current charge involved guns, the court withheld from the jury the fact that the prior crime, like the one for which

---

21. Art. 27, section 445(d)(i) and (ii) make it a felony for a person to possess a regulated firearm after the person has been convicted of: (i) a crime of violence; or (ii) any violation classified as a felony in this State. Appellant was charged under section 445(d), and his Statement of Charges specified that he had been convicted of a "crime of violence." Appellant did not argue that the trial court should give a more general instruction, saying that he had been convicted of "a felony," which would have been sufficient under section 445(d)(ii). Rather, he offered to stipulate to having been convicted of a "crime of violence." If he had offered to stipulate, instead, that he was guilty of "a felony," and requested a jury instruction similar to that requested by Old Chief, a different question would have been presented. We do not reach that question in this opinion.

appellant was being currently tried, involved a handgun. In addition, the court gave a limiting instruction like the one approved in *Frazier*.

To hold that the trial court abused its discretion, we must find that " 'no reasonable person would take the view adopted by the [trial] court[.]' " *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110 (1997) (citation omitted); *see Metheny v. State,* 359 Md. 576, 604, 755 A.2d 1088 (2000). Essentially, the trial judge was called upon to decide whether the risk of unfair prejudice from specifying the name of appellant's prior crime was any greater than the evidence admitted by necessity—that he was convicted of a prior crime of violence. For the reasons set forth above, we think the trial court did perform the necessary balancing test, and its decision was reasonable. Accordingly, we conclude that the trial court did not abuse its discretion.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**